**Shirley M. ROCK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1178S258.**

Supreme Court of Indiana.

May 2, 1979.

Harriette Bailey Conn, Public Defender, Ihor N. Boyko, Deputy Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant, Shirley Rock, was charged with first degree murder by an Elkhart County Grand Jury on June 14, 1972. She later pleaded guilty to the lesser included offense of second-degree murder and on October 3, 1972, was sentenced to life imprisonment. On October 24, 1977, she filed a Petition for Post-Conviction Relief, the denial of which gave rise to the present appeal.

Appellant presents four issues for our review, concerning: (1) the trial court's findings; (2) the adequacy of the factual basis for accepting appellant's guilty plea; (3) alleged prosecutorial misconduct at the sentencing hearing, and; (4) the constitutionality of imposing a life sentence for second-degree murder and of denying good time credit to prisoners serving life sentences.

I.

Appellant advances two arguments relating to the findings contained in the trial court order denying post-conviction relief. She first argues that the trial court's findings failed to address an issue raised in her petition. The issue referred to is a

claim that a succession of Indiana statutes dealing with good time credit are unconstitutional for failing to provide credit for prisoners serving life sentences. She contends that since her petition listed numerous statutes, the constitutionality of each statute was a separate issue which the trial court was required to address. There is no merit to this claim. None of the statutes listed in appellant's petition provided good time credit for prisoners serving life thus there was only one issue presented which the trial court did address. After an extensive legal discussion, the trial court concluded that there was no constitutional infirmity in good time statutes which are not applicable to terms of life imprisonment.

■ Appellant also argues that the trial court erred by including a finding which she claims was "unrelated to any allegation made in her post-conviction petition" and was "not based on any evidence in the record and [was] merely based on speculation and conjecture." Appellant does not explain, nor are we able to perceive, how she was prejudiced by a finding which was unrelated to the issues raised by her petition. There is thus no error here.

### II.

■ Appellant next contends that there was an insufficient factual basis for her guilty plea. The transcript of the guilty plea discloses that the court read to appellant the indictment, which contained allegations that on May 25, 1972, she had administered arsenic poison to her husband, David Rock, and that as a direct result of such poisoning, David Rock died. The court then asked appellant if she was pleading guilty because she had purposely and maliciously taken her husband's life and she answered, "Yes, I did."

Detective Fervida, the officer in charge of the investigation into the death of Mr. Rock, testified that he contacted appellant on May 25, 1972, after being informed by the coroner that Mr. Rock had died of poisoning. Appellant claimed she did not know how her husband had ingested any poison but later, on June 8, she admitted to Fervida that she had poisoned her husband. Detective Fervida further testified that appellant told him that she had made a study on the use of poison in causing death and had attempted to kill her husband with ant poison on two previous occasions. She also admitted that she had gone to a local library where she read through several medical reference encyclopedias and where she checked out a book titled *To Kill With Kindness*. She stated that she had read this book prior to the first time she gave her husband poison.

We think that this evidence constituted a sufficient factual basis for the trial court's acceptance of appellant's plea of guilty.

### III.

At the sentencing hearing following appellant's guilty plea, the prosecutor made the following statement:

So the imposition of a sentence of life imprisonment or the imposition of a sentence of 15 to 25 years that Mr. Hepler is talking about is very little different when it comes to a good inmate and the prisoner has a good institutional record. The amount of time basically served is very close. If I am correct and counsel is equally correct and the defendant here is a subject for rehabilitation and her institutional conduct would be good, I believe that the amount of time she would spend incarcerated under one sentence would be very little different from the other.

But the decision cannot be made today by your Honor intelligently or Mr. Hepler. That has to be determined in the light of the future, in the light of her institutional conduct and, therefore, the State will not and cannot be a party of a system of guesswork in that regard.

And so we say in conclusion that we can take all the facts, all the circumstances put together, the fact that the charge has already been reduced from first degree murder to second degree murder, and we believe, sincerely believe, your Honor, not in the vindictive sense, not in the punishing sense, but in the sense of

fairness and a sense that one has of paying ample service to the theory of deterrent and deterrent in our society that this Court in the interest of public good must impose the maximum sentence. Thank you.

Appellant now contends that the remark to the effect that there is little difference between a sentence of fifteen to twenty-five years and life imprisonment, amounted to prosecutorial misconduct which placed her in a position of grave peril.

 In reviewing claims of prosecutorial misconduct, this Court considers the following: (1) whether or not the prosecutor in fact engaged in misconduct as determined by reference to the applicable case law and disciplinary rules; (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which she should not have been subjected, as measured by the probable persuasive effect of the misconduct on the jury's decision, and; (3) whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant. *Maldonado v. State*, (1976) 265 Ind. 492, 499, 355 N.E.2d 843, 848.

In the present case, assuming *arguendo* that the prosecutor's comment was improper, we do not believe that it was such as would place appellant in a position of grave peril. There were no repeated efforts on the part of the prosecutor to improperly prejudice appellant and, of course, no jury was involved with this sentencing hearing. We agree with the conclusion reached by the Court in the post-conviction proceeding that there is nothing in the record which would indicate that the sentencing judge was in any way influenced by the prosecutor's remark.

### IV.

As her final argument, appellant requests that we reexamine and overrule our decisions in *Brown v. State*, (1974) 261 Ind. 619, 308 N.E.2d 699 and *Jones v. Jenkins*, (1978) Ind., 372 N.E.2d 1163, holding that statutes providing life sentence for second-degree

murder and denying good time credit to prisoners serving life sentences are both constitutional. We decline to do so.

The judgment of the trial court is affirmed.

All Justices concur.