**Darrell R. NEAL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 33A01-8610-CR-263.

Court of Appeals of Indiana, First District.

April 30, 1987.

Rehearing Denied June 4, 1987.

James L. Brand, Richard D. Culver, Free, Brand, Tosick & Allen, Greenfield, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Darrell Rick Neal (Neal) appeals his conviction of burglary, a class C felony.

We affirm.

During the early morning hours of July 4, 1985, officers with the New Castle Police Department responded to an alarm triggered at the Speedway Petroleum convenience store at South 14th and Riley Road in New Castle. As one of the officers was exiting his police vehicle, he observed that the bottom of an aluminum glass door had been completely broken and an individual was running out through the broken section. The officer then saw another person inside running south to north in the building and "kind of duck" around a corner.

As the officer entered the building through the bottom half of the door, he noticed cartons of cigarettes had been strewn about the store and others had been "bagged and boxed." He observed several garbage bags filled with cigarettes sitting around on the floor, a pair of gloves, and a box of trash bags. The officer then discovered the appellant, Neal, behind the counter, squatting down in the corner against the wall and facing toward him.

Neal responded immediately to the officer's command to lie face down on the floor and put his hands behind him. He had no difficulty doing so and was calm and quiet. As the officer helped Neal to his feet, the officer did not see anything unusual about Neal's eyes. The officer did not smell anything. Neal did not shuffle or stumble getting in and out of the car or walking in and out of the police station or county jail.

Neal raises six issues for our review on this appeal. We will discuss them as four:

(1) Whether the State presented sufficient evidence of Neal's mens rea.

(2) Whether a mistrial was the only appropriate remedy for certain incidents of alleged prosecutorial misconduct.

(3) Whether the effect of pretrial publicity was so prejudicial as to warrant a change of venue from the county or individual voir dire of each prospective juror.

(4) Whether the sentencing court failed to specifically enumerate the aggravating circumstances which would justify the imposition of an enhanced sentence.

## I

### Sufficiency of Evidence

Neal argues that the State failed to show that he entertained the specific intent necessary to prove burglary. At trial, Neal contended that he became involuntarily intoxicated on the evening of July 3, 1985 when he unwittingly mixed prescription medication with alcohol.

Our standard of review of the sufficiency of evidence is well-known. This court neither weighs the evidence nor resolves questions of credibility. Rather, we look to the evidence and the reasonable inferences therefrom which support the verdict. If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309, 1314.

Involuntary intoxication is a statutory defense. IND.CODE 35–41–3–5 provides:

(a) It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, if the intoxication resulted from introduction of a substance into his body:

(1) without his consent; or

(2) when he did not know that the substance might cause intoxication.

The defense of involuntary intoxication may afford a complete defense which excuses the criminality of the act. *Heyward v. State* (1984), Ind., 470 N.E.2d 63, 64. To operate as a complete defense, however, the intoxication must be shown to have been of such a degree as to have deprived the accused of the power to deliberate or form the necessary design or guilty intent. *Id.; Jackson v. State* (1981), Ind., 426 N.E.2d 685, 689. In other words, involuntary intoxication is a defense to a crime if the intoxication rises to the level that a defendant lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. *Heyward*, 470 N.E.2d at 164. Whether or not an appellant's involuntary intoxication prevented him from forming the requisite intent is a

question of fact for the jury and one upon which the appellant bears the burden of proof. *Jackson v. State*, 426 N.E.2d at 689.

██ Neal testified that he consumed four or five vodka and tonic drinks within four hours of the burglary and ingested 1000 milligrams of Placidyl, a non-barbituric sedative-hypnotic drug used to induced sleep, and one milligram of Minipress, an antihypertensive drug used to reduce elevated blood pressure. He told the jury that he had been taking these prescribed medications everyday in the morning and evening since 1978, and that in July of 1985, he had been prescribed 500 milligram doses of Placidyl. At the time of trial, Neal's prescription had been changed to a 750 milligram dosage. Neal also testified that in June and July of 1985, he had been drinking beer and vodka.

Neal also presented expert testimony that alcohol would elevate the effect of the Placidyl and that both alcohol and Placidyl are capable of producing a tolerance to the other; that is, the actual effect of the drug could be exacerbated and the tolerance level would be such that it would take more of the Placidyl to produce sleep even when mixed with the alcohol. The expert further testified that for someone who has been taking Placidyl over a period of time, it would take anywhere from 500 milligrams to a gram (1000 milligrams) or two grams to induce sleep. In addition, the expert testified that the effect of the drug would probably be most potent within an hour and a half to two hours after ingestion and the effect of the drug would then be gone within three to four hours.

Reviewing the evidence and reasonable inferences favorable to the State, we find that more than sufficient evidence was presented to the jury to enable it to find that Neal had formed the requisite intent. The jury could reasonably infer from the evidence and expert testimony presented by Neal that he had developed a tolerance to his prescribed medication, and any sleep-inducing effect had worn off before the burglary was committed. Such an inference would be consistent with the evidence presented by the State that Neal did not appear or act intoxicated. Neal was caught inside the convenience store with merchandise scattered around him. He attempted to evade the police by hiding behind a counter. Neal moved without apparent difficulty within the building and to and from the police vehicle. He responded capably to questioning. Under these circumstances and in light of our standard of review of sufficiency of evidence claims, we must conclude that there was substantial evidence of probative value to support the jury's finding of the necessary specific intent.

## II

### Prosecutorial Misconduct

Neal alleges that two incidents of prosecutorial misconduct prevented him from receiving a fair trial. First, Neal claims that the prosecutor made the editorial comment "that's apt" when the defense tendered exhibit "# BS." Second, Neal asserts that one of the State's witnesses violated the court's pretrial order which forbid the introduction of testimony which would directly or indirectly indicate that the defendant refused to give a statement following arrest.

The record reveals the following colloquy occurred when the defense attempted to introduce exhibit # BS, which contained warning labels commonly found on medication bottles:

Mr. Brand: Offer # BS.

Mr. Stamper: That's (Inaudible) . . .

Mr. Brand: Beg your pardon?

Judge, may we approach the bench? (off the record)

Court: For any jurors who heard Mr. Stamper's comment, they're admonished to disregard it.

\* \* \* \* \* \*

Mr. Brand: It's in evidence?

He said he had no, he said he had no objection.

Court: When you approached the bench, you asked me to admonish the

jury which I did, and I haven't made any other rulings or heard any other matters.

■ The State argues that Neal did not comply with the rules of court which provide the means for presenting evidence or testimony when no record was made or a transcript is unavailable. *See*, Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c); Criminal Rule 16; Trial Rule 59(H)(1). While we agree with the State that an error is deemed waived when the appellant fails in his duty to present an adequate record clearly showing the alleged error, *Jackson v. State* (1986), Ind., 496 N.E.2d 32, 33; *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309, 1312, we believe this issue is easily disposed of on its merits.

■ The standard for determining whether prosecutorial misconduct occurred is whether the conduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the persuasive effect of the misconduct on the jury's decision and whether there were repeated instances of misconduct which would evince a deliberate attempt to improperly prejudice the defendant. *Rock v. State* (1979), 270 Ind. 658, 388 N.E.2d 533; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. The existence of prosecutorial misconduct does not therefore necessarily constitute reversible error. A judgment will not be set aside because of a charge of misconduct of counsel in the absence of a clear showing of prejudice or breach of discretion on the part of the trial court. *Henderson v. State* (1977), 173 Ind.App. 505, 364 N.E.2d 175, 178.

■ The record shows that defense counsel objected to the remark and asked that the jury be admonished to disregard it. The trial court took the curative measures requested by the defendant, admonishing the jurors to disregard the comment if they heard it. Assuming the content of the remark was as claimed by the appellant, no reason exists for presuming that the trial court abused its discretion or that the admonition did not have its desired effect. *Bixler v. State* (1984), Ind., 471 N.E.2d

1093, 1102, *cert. denied* —— U.S. ——, 106 S.Ct. 106, 88 L.Ed.2d 86. Consequently, we find no reversible error occurred as a result of the prosecutor's comment.

Neal alleges that the second incident of misconduct occurred during the direct examination of Officer Riggs. The examination transpired as follows:

(Prosecutor) Q. And he was taken then where?

(Officer) A. At the end of the hallway which adjoins Lieutenant Baker's office, which is straight east into the back door.

Q. So you had an opportunity to observe him walking down the hallway?

A. Yes, I did. I walked him to the end of it.

Q. And was there, describe his walk or gait at that time.

A. Again, nothing that drew my attention, just a normal pace of walk.

Q. Was there anything from-strike that, I'm sorry. What happened next?

A. From that point, Lieutenant Baker arrived back from the scene and has taken Mr. Neal into his office.

Q. And then you stood by outside?

A. Yeah, I stood by.

Q. Was there a period of time then when you saw Mr. Neal again?

Q. (sic) After he was done, I escorted Mr. Neal to the Henry County Jail, where he was booked at that time.

Q. Now, I take it you went through the same process of walking him out?

A. Yes, yes, I did.

Q. How long a period of time passed there if you know?

A. I really don't recall. I would guess no more than a half hour, forty minutes, somewhere from the time he came back and questioned Mr. Neal.

Defense counsel asked the court to declare a mistrial following this testimony, arguing that the witness's reference to "questioning" deliberately violated the court's pretrial order by raising the inference that the defendant exercised his fifth amendment right to remain silent following his arrest. After an evidentiary hearing,

the trial court ruled that a direct reference to the defendant's refusal to give a statement had not been made and that the answer given by Officer Riggs was susceptible of a number of different inferences. The court further found that the defendant's motion in limine and the court's order entered pursuant to that motion did not directly preclude reference to the testimony which was given. Rather, the order specifically entitled the State to introduce evidence relative to questioning regarding personal data of the defendant. Applying *White v. State* (1971) 257 Ind. 64, 272 N.E.2d 312, the trial court concluded that the reference to questioning was not a deliberate attempt to prejudice the defendant and that at that point in the trial the evidence of the defendant's guilt was not even close. Upon the jurors' return, the trial court admonished the jury without referring to the content of the question and answer to disregard the last question and answer.

■ Neal has failed to convince us that a mistrial was the only appropriate remedy. The granting of a mistrial lies largely within the sound discretion of the trial court and is only proper where, under all the circumstances, the defendant has been placed in a position of grave peril to which he should not have been subjected. *Tinnin v. State* (1981), Ind., 416 N.E.2d 116; *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. No reversible error will normally be found if a jury is admonished by the trial judge to disregard what has occurred at trial or if other reasonable curative measures have been taken. *Tinnin*, 416 N.E.2d at 118.

■ As the trial court pointed out in its ruling on the motion for mistrial, placing a defendant in a position where he is compelled to testify in order to dispel a prejudicial inference probably would place a defendant in a position of grave peril. Neal, however, has failed to show that he was placed in such a position by the prosecution, and that it was a position *to which he should not have been subjected.* The witness's reference to questioning was ambiguous; it was part of a sequence of questions dealing with the extent of Neal's intoxication, an issue raised by the defense. Furthermore, even if the jury had inferred from the officer's testimony that Neal had been questioned for nearly forty minutes, the inference that the defendant gave a statement is as likely as the inference that he had refused.

If in fact any damage did occur as a result of the question and answer, we fail to see how the court's admonition was inadequate. The admonition came after a prolonged period of delay, and was tailored to minimize any injury to the defendant without reference to the content of the witness's testimony.

Finally, we must conclude that any prejudice resulting from the testimony must have been slight when compared with the undisputed evidence against the defendant. Neal was caught inside the service station with a pair of gloves, plastic garbage bags and cartons of cigarettes surrounding him. Under these circumstances, we cannot conclude that Officer Riggs' reference to questioning placed Neal in grave peril, requiring the declaration of a mistrial.

III

Pretrial Publicity

Neal argues that he was denied a fair trial when the trial court denied his motion for change of venue from the county and individual voir dire of each prospective juror. He contends that there existed at the time of trial a pervasive attitude in the community which was prejudicial to him due to radio accounts of a companion case airing the Friday before his trial was to begin, and because of the notoriety of the surname "Neal".

The trial court denied Neal's petition for individual voir dire to the extent it requested voir dire of each prospective juror but took under advisement the prospect of individual voir dire of those prospective jurors who revealed during the court's questioning that they had read or heard about the case. The request for change of venue was also taken under advisement initially, but on the second day of jury selection, the

court denied the motion because only one prospective juror knew Neal, none had any knowledge of the charges or matters related to them and only one member of the venire had been excused for cause.

Voir dire was not recorded; neither was it made a part of the record on appeal by Neal pursuant to Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c). There is thus no indication in the record that Neal exhausted his peremptory challenges.

■■■ A decision on a motion for change of venue, like a determination with respect to the extent of questioning of prospective jurors, is a matter within the trial court's discretion. Ind. Rules of Procedure, Criminal Rule 12; *Hinds v. State* (1984), Ind.App., 469 N.E.2d 31, 37. The burden rests with the moving party to establish that there has been adverse publicity and that the jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon evidence introduced at trial. *Yeagley v. State* (1984), Ind., 467 N.E.2d 730, 733. In order to prove error in the denial of a motion for change of venue from the county, the defendant must show that he exhausted his peremptory challenges in an effort to secure juror impartiality. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, 1100.

■■■ Neal's allegation of prejudice is not substantiated in the record. He made no showing of adverse, sensational or inflammatory publicity, Neal having presented evidence of only one radio broadcast which on review appears to be nothing more than a factual account of court proceedings and filings. *See Bixler, supra* at 1093 and cases cited therein. Neal also has not controverted the trial court's findings that there was no demonstratable effect from the publicity surrounding the incident on the venire. He does not argue on appeal that the need for individual voir dire arose but he was denied the opportunity to question. Under these circumstances, the denial of his motions for change of venue and individual voir dire was unquestionably proper.

## IV

### Sentencing

■ Finally, Neal contends the trial court abused its discretion in enhancing his sentence without reciting and specifically enumerating aggravating circumstances which would justify the imposition of an enhanced sentence.

We find absolutely no merit in this contention.

The sentencing court did make a record of its reasons for imposing the two year enhancement in this case. The statement covers over six pages of the transcript. The trial court went through each of the mandatory factors contained in IND.CODE 35–38–1–7(a), each of the discretionary aggravating circumstances provided in subsection (b) which he found applicable, and the mitigating circumstances which applied. The trial court specified with respect to each legal conclusion, the facts found from the evidence presented at trial and at the sentencing hearing, and contained in the pre-sentence report which supported his conclusion. He articulated on the record the balance of these factors. We believe the statement on the record is indicative of nothing but a thorough and thoughtful sentencing decision. The authority cited by Neal does not require more. *See, e.g. Gardner v. State* (1979), 270 Ind.App. 627, 388 N.E.2d 513; *Shippen v. State* (1985), Ind., 477 N.E.2d 903; *Smith v. State* (1985), Ind., 474 N.E.2d 71; *Taylor v. State* (1985), Ind., 480 N.E.2d 907.

Judgment affirmed.

NEAL and HOFFMAN, JJ., concur.