Sherry L. **HUPP, Individually, and on Behalf of her minor children, Jeremy Joe Davis, and Jason Ray Davis: Jeremy Joe Davis, Jason Ray Davis, Appellants–Plaintiffs,**

v.

Rick **HILL, Individually, and in his capacity as Sheriff of the Bartholomew County Sheriff's Department; Bartholomew County Sheriff's Department; Columbus Police Department; Joseph Koenig, Individually, and in his capacity as Prosecuting Attorney for Bartholomew County; Bartholomew County Prosecutor's Office; Richard Eppard; and City of Columbus, Appellees–Defendants.**

No. 73A01–9101–CV–21.

Court of Appeals of Indiana,
First District.

Aug. 26, 1991.

Stephen C. Litz, Indianapolis, for appellants-plaintiffs.

Peter C. King, Virginia E. Hench, Cline, King & King, Columbus, David A. Nowak, Asst. Atty. Gen., Indianapolis, Joseph Thompson, Columbus, Caren Pollack, Stephenson & Kurnik, Indianapolis, William H. Stone, Columbus, for appellees-defendants.

BAKER, Judge.

This appeal calls on us to review the status of the immunity afforded judges and prosecutors in cases brought under the Indiana Tort Claims Act (ITCA).[1] We must also review the application of ITCA's notice provisions to elected Sheriffs and their departments, and the application of Ind.Trial Rule 15(C) to a John Doe complaint brought under ITCA.

Plaintiff–appellant Sherry Hupp raises five restated issues for our review:

I. Whether a judge *pro tempore* acts in clear absence of all jurisdiction when he signs a search warrant requested during the term of his appointment, but not prepared for signing until after the expiration of his appointment.

II. Whether a prosecutor's actions in procuring a search warrant from a judge *pro tem* during and after the judge *pro tem's* term of appointment and in accompanying sheriff's deputies during the execution of the warrant are protected by absolute immunity.

III. Whether the trial court erred in determining Hupp failed to provide Bartholomew County Sheriff Rick Hill with the notice of claim required under IND.CODE 34–4–16.5–7.

IV. Whether the trial court erred in entering summary judgment for the City of Columbus.

V. Whether the trial court erred in denying Hupp's motion to amend her complaint.

We affirm.

## FACTS

On December 11, 1987, defendant-appellee Richard Eppard served as judge *pro tempore* of the Bartholomew Circuit Court. The term of his appointment ran until 5:00 p.m. Sometime in the early afternoon, defendant-appellee Joseph Koenig, the Bartholomew County Prosecuting Attorney, approached Eppard. Koenig informed Eppard that a search warrant was being prepared for the home of Donald Davis as part of a drug investigation, explained the rea-

---

1. IND.CODE 34–4–16.5–1 *et seq.*

soning for the warrant, and requested that Eppard issue the warrant later that afternoon when the documents were completed. Eppard agreed, but Koenig was unable to present the warrant and the supporting probable cause affidavit until after 5:00 p.m. Eppard nonetheless signed the warrant because he knew the situation surrounding the warrant and because Koenig knew none of the elected Bartholomew County judges were available.

Later that evening, Bartholomew County Sheriff's deputies executed the warrant. While searching Davis's home, the deputies found marijuana, hashish, and drug paraphernalia. Davis, plaintiff-appellant Sherry Hupp, and the couple's two minor children were all in the home during the search. Davis and Hupp were arrested. Hupp was released without being charged, and the charges against Davis were dismissed in return for his covenant not to sue.

Hupp brought suit for herself and the children against Eppard, Koenig individually and in his capacity as Prosecutor, Bartholomew County Sheriff Rick Hill individually and in his capacity as Sheriff, the City of Columbus, and the Columbus Police Department[2] under the Indiana Tort Claims Act (ITCA). Count I of the complaint alleged that the warrant was invalid because Eppard's *pro tem* status had expired before Eppard signed the warrant; that Eppard, Hill, and Koenig all knew or should have known the warrant was invalid due to the expiration of Eppard's *pro tem* status; that the law enforcement personnel executing the warrant conducted the search in a violent, threatening, and abusive manner towards the plaintiffs; that Hupp was falsely arrested and imprisoned, and that both she and the children suffered emotional distress stemming from the search, arrest, and confinement; and, that Hupp's emotional distress was increased by

the subsequent prosecution (albeit terminated) of Davis. Count II incorporated the allegations of Count I and further alleged that the defendants' actions were willful and wanton, and that the plaintiffs were therefore entitled to punitive damages.

[1] After hearings, a change of judge, and repeated hearings, the special judge entered judgment in favor of all the defendants. On appeal, Hupp argues the trial court erred in entering judgment and in refusing to allow Hupp to amend the complaint. Some of the appellees are before us on grants of summary judgment.[3] This being so, we are required to view all the facts in the light most favorable to the non-movant. *Hatton v. Fraternal Order of Eagles, Aerie # 4097* (1990), Ind.App., 551 N.E.2d 479, *trans. denied.* Summary judgment is proper only when no genuine issue of material fact exists. *McClure v. Strother* (1991), Ind.App., 570 N.E.2d 1319. When the party moving for summary judgment is the defendant, "a showing of the absence of any genuine issue of material fact shifts the burden to the plaintiff to show a genuine issue of material fact does exist." *Tucher v. Brothers Auto Salvage Yard, Inc.* (1991), Ind.App., 564 N.E.2d 560, 562, *trans. denied.* Absent a genuine issue of material fact, we will affirm a grant of summary judgment on any theory supported by the record. *Stephenson v. Ledbetter* (1991), Ind.App., 575 N.E.2d 1035, 1036.

■ Moreover, in this case, we must approach our review bearing in mind that some of the judgments were entered on the basis of Hupp's failure to comply with the notice provisions of ITCA. "[T]he question of compliance [with ITCA] is a procedural precedent which the plaintiff must prove and which the trial court must determine prior to trial." *Indiana Dep't of Highways v. Hughes* (1991), Ind.App., 575 N.E.2d 676, 678 (citation omitted); *Indiana*

---

**2.** The parties stipulated to the dismissal of the complaint against the Columbus Police Department, and, accordingly, no issue concerning the Department is before us.

**3.** Some of the defense motions were motions to dismiss, but because the court went beyond the

pleadings in reviewing the motions, they are treated as though they were summary judgment motions. Ind.Trial Rule 12(B)(8); *Hamilton v. Roger Sherman Architects Group, Inc., et al.* (1991), Ind.App., 565 N.E.2d 1136.

*State Highway Comm'n v. Morris* (1988), Ind., 528 N.E.2d 468, 471. These judgments based on compliance with ITCA, then, are subject to review as negative judgments, which we will reverse only if contrary to law. *Dunn v. City of Indianapolis* (1983), Ind.App., 451 N.E.2d 1122, *trans. denied.*

We turn now to Hupp's claims against each of the defendants.

### EPPARD

■ The state of judicial immunity in Indiana is clear.[4] In actions brought under ITCA or under 42 U.S.C. § 1983, a judge of a court of general jurisdiction is subject to civil liability only if he or she has acted "in the clear absence of all jurisdiction." *Owen v. Vaughn* (1985), Ind.App., 479 N.E.2d 83, 86 (quoting *Stump v. Sparkman* (1978), 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331, 339).[5] The question concerning Eppard, then, becomes whether he acted "in the clear absence of all jurisdiction" when he issued the search warrant after the expiration of his appointment.

■ A judge *pro tempore* exercises all the authority and jurisdiction of the regular judge whom the *pro tem* replaces. Ind.Trial Rule 63(E). Unlike a special judge, whose jurisdiction is limited to a specific assigned case, a *pro tem's* jurisdiction vis a vis the regular judge is limited only by time. *Skipper v. State* (1988), Ind., 525 N.E.2d 334. The expiration of the term, however, does not necessarily end a judge *pro tem's* authority. Once a judge *pro tem* has begun consideration of a case, that is, begun hearing evidence, he or she has jurisdiction to hear the case to completion. *State v. Smith* (1973), 260 Ind. 555, 297 N.E.2d 809; *State ex rel. Hodshire v. Bingham* (1941), 218 Ind. 490, 33 N.E.2d 771; *Needham v. Needham* (1980), Ind. App., 408 N.E.2d 562, 563, *trans. denied.*

While this rule is well settled, its boundaries are less so. Our research has revealed no case in which a judge *pro tem* has been placed in a situation akin to Eppard's. The reported cases, however, reveal a strong inclination to allow a judge *pro tem* to proceed with a matter commenced during the term of appointment. *See, id.,* and cases cited therein. The inclination is especially strong when, as here, the challenged conduct occurred within a distinct phase of a given proceeding, i.e., the request for, and issuance of, a search warrant, at the outset of judicial proceedings. *See Williams v. State* (1985), Ind., 485 N.E.2d 100, 101 (no requirement that judge *pro tem* who presided over guilty plea hearing be the only judge authorized

**4.** The doctrine of judicial immunity is one of the strongest traditions of the common law. Existing not to protect malicious or corrupt judges, but rather to ensure the independence and integrity of the judiciary, it dates at least from the 17th century, *Pulliam v. Allen* (1984), 466 U.S. 522, 530–36, 104 S.Ct. 1970, 1976–78, 80 L.Ed.2d 565, 571–76, and survives even in the absence of sovereign immunity. *Peavler v. Monroe County Bd of Comm'rs* (1988), Ind., 528 N.E.2d 40, 44; *Campbell v. State* (1972), 259 Ind. 55, 63, 284 N.E.2d 733, 737. The United States Supreme Court fully adopted the doctrine in *Bradley v. Fisher* (1872), 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646, a case arising out of the trial of John Suratt, one of John Wilkes Booth's co-conspirators in the assassination of President Abraham Lincoln.

**5.** By virtue of historical happenstance, cases arising in Indiana have paved the way in defining the liability of judges and prosecutors under 42 U.S.C. § 1983. *See Stump, supra* (Indiana circuit court judge who ordered sterilization of retarded child upon child's mother's motion was absolutely immune to suit under 42 U.S.C. § 1983); *Burns v. Reed* (1991), — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547, in which the Court held an Indiana prosecutor was absolutely immune to suit under 42 U.S.C. § 1983 for his actions in appearing before a judge to present evidence in support of a motion for a search warrant, and qualifiedly immune for giving legal advice to police in an investigation; *Imbler v. Pachtman* (1976), 424 U.S. 409, 421, 96 S.Ct. 984, 990–91, 47 L.Ed.2d 128, 138–39, in which the Court discussed *Griffith v. Slinkard* (1896), 146 Ind. 117, 44 N.E. 1001, as the leading case in the United States establishing the immunity of prosecutors in common law malicious prosecution actions.

In turn, our courts have relied on the analyses in *Stump* and *Imbler* in discussing the immunity of judges and prosecutors in cases brought under ITCA. *See Foster v. Pearcy* (1979), 270 Ind. 533, 387 N.E.2d 446, *cert. denied* (1980), 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235; *Owen, supra.*

to preside over sentencing, a distinct phase of the case).

■ The present case, however, is not the case to decide whether a judge *pro tem* has jurisdiction to issue a search warrant after the expiration of his term when no regular judge is available and when the prosecutor approached the judge *pro tem* about the warrant during the term of appointment. That question is rightly to be answered within any criminal proceeding stemming from such a warrant. Here, we need only determine whether Eppard acted in the clear absence of all jurisdiction.

In reaching our determination, we are mindful that both our supreme court and the United States Supreme Court have discussed the importance of liberally construing a judge's jurisdiction when judicial immunity is at issue. *Cato v. Mayes* (1979), 270 Ind. 653, 656, 388 N.E.2d 530, 532; *Stump, supra*, 435 U.S. at 356, 98 S.Ct. at 1105, 55 L.Ed.2d at 339. Given the readiness of our courts to allow judges *pro tem* to complete what they have started, coupled with the liberal interpretation we must give to jurisdictional questions under *Stump* and *Cato*, as well as the unavailability of any regular judge in this case, we conclude Eppard was not acting in the clear absence of all jurisdiction, and is therefore immune to suit.[6]

## PROSECUTOR KOENIG

Hupp argues Koenig is liable for wrongfully procuring the search warrant from Eppard, and for his actions at Davis's home during the search. She premises her argument on two fallacious contentions: first, that Koenig should not have sought to procure a search warrant from a judge *pro tem* whose term had already expired; and second, that Koenig's activities at the scene of the search raise a question of material fact precluding summary judgment.

■ As for the first contention, we have already held that Eppard did not act in the clear absence of all jurisdiction, and is therefore immune to suit. It would be anomalous indeed to hold a prosecutor liable for procuring a search warrant from a judge *pro tem* whose term had expired, while at the same time forbidding liability to attach to the judge *pro tem* who actually signed the warrant. Moreover, appearing before a judge to request a search warrant is exactly the type of judicial act to which absolute immunity applies. *Burns, supra*, 111 S.Ct. at 1942. *See also Foster, supra*, n. 5. Finally, a request for a search warrant constitutes the initiation of a judicial proceeding, which is specifically enumerated as an immune act under IND.CODE 34–4–16.5–3(5).

■ As for the second contention, our supreme court made clear in *Foster* that when the acts of a prosecuting attorney "are reasonably within the general scope of authority granted to prosecuting attorneys no liability [in common law or ITCA actions] will attach." *Id.* at 538, 387 N.E.2d at 449.[7] It was within the general scope of Koenig's authority to accompany the law enforcement officers on their execution of the search warrant, and Hupp has alleged

---

**6.** Perhaps the following tale by Oliver Wendell Holmes, recounted by Ohio Chief Justice Thomas Moyer, best illustrates the troublesome nature of jurisdictional questions:

[There was a] portly Ohio justice of the peace who owned a farm, with a fence running along the Ohio–Indiana boundary. Like many others who held that office, this fellow had an inflated appreciation of his responsibility, and he never lost an opportunity to exercise his authority to demand that the peace be preserved.

One day he observed his son and a hired hand fighting on a stretch of the farm near the boundary fence. The justice of the peace rushed out and leaped onto the fence. From this commanding position, with his head held high, he imperiously shouted, 'In the name of the state of Ohio, I demand the preservation of the peace.' Just then the fence gave way under his weight, and as he toppled over the boundary line into Indiana, he shouted, 'Give him the devil, son, I've lost my jurisdiction.'

Moyer, *Report to the Ohio Judicial Conference*, 63 Ohio State Bar Ass'n Report No. 38 at A–2 (1990).

Here, the fence may well have given way under Eppard, but whether he would have landed on the jurisdictional or the non-jurisdictional side of the fence is an open question, and he is therefore immune to suit.

**7.** In light of the United States Supreme Court's recent decision in *Burns, supra*, it seems clear that Koenig's presence and activities at the scene of the search would be afforded only a qualified immunity in a § 1983 action. In the present case, however, Hupp would nonetheless be precluded from proceeding.

no acts (e.g., a battery against Hupp) by Koenig at the scene of the search which could even remotely be considered outside the scope of his authority. Indeed, she alleges only that Koenig was present during the search.

To withstand Koenig's motion for summary judgment, it was incumbent upon Hupp to come forward with some evidence that Koenig acted in a manner outside the scope of his authority. *See Tucher, supra* (once a defendant moving for summary judgment demonstrates the absence of a genuine issue of material fact, the plaintiff assumes the burden of showing a genuine issue of material fact does exist). Her failure to come forward with any evidence whatsoever mandates the entry of summary judgment against her.

## SHERIFF HILL

The trial court determined Hupp had not provided the Sheriff with notice of her claim as required by IND.CODE 34–4–16.5–7 because the notice of claim Hupp filed with the Bartholomew County Board of Commissioners did not suffice as notice to the Sheriff. Hupp now argues the Sheriff was not entitled to notice under ITCA.

■ Specifically, she argues that the Sheriff is not within the ambit of ITCA's notice provisions because IND.CODE 34–4–16.5–2 does not include Sheriffs as either public employees or political subdivisions. This question was decided adversely to Hupp almost a decade ago in *Teague v. Boone* (1982), Ind.App., 442 N.E.2d 1119. In *Teague*, this court held a Sheriff "fulfilling the duties of his office" is a public employee under IND.CODE 34–4–16.5–2 to whom notice must be given. *Id.* at 1120. Since the execution of a search warrant and the arrest on probable cause of persons in possession of illegal drugs are unquestionably official duties of the Sheriff, IND.CODE 36–2–13–5, Hupp's failure to provide notice is fatal to her claim.

Viewing the evidence in the light most favorable to Hupp, there is no allegation that Koenig actually did anything while at the scene of the search. To defeat a claim of qualified immunity under § 1983, there must be a showing that the defendant violated a clearly established right: "in the light of pre-existing law, the un-

■ Alternatively, Hupp argues the notice of claim sent to the Commissioners, coupled with Sheriff Hill's actual knowledge of the underlying incident, constitute substantial compliance with ITCA's notice requirements. Hupp's burden here is a heavy one. She is appealing from a negative judgment, *Dunn, supra,* which we will reverse only if the evidence is without conflict, and all reasonable inferences supported by the evidence lead inescapably to but one conclusion opposite that reached by the trial court. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884, *trans. denied.*

It is well settled that Indiana Sheriffs are not subject to the control or authority of the County Commissioners of the county in which they hold office. *Carver v. Crawford* (1990), Ind.App., 564 N.E.2d 330; *Delk v. Board of Comm'rs of Delaware County* (1987), Ind.App., 503 N.E.2d 436. Accordingly, while the Bartholomew County Board of Commissioners is the governing body of Bartholomew County, and must be served with notice of a claim against Bartholomew County, IND.CODE 34–4–16.5–2, notice to the Board of a claim against the Bartholomew County Sheriff is ineffective. Moreover, Sheriff Hill's knowledge of the search does not amount to notice of Hupp's claim. *Teague, supra,* at 1120.

The trial court properly granted judgment to Sheriff Hill on the basis of Hupp's failure to comply with IND.CODE 34–4–16.5–7.

## THE CITY OF COLUMBUS

Hupp's only remaining claim is against the City of Columbus. She argues the trial court erred in granting summary judgment to the City.

■ Hupp's claim against the City fails for the simple reason that she has alleged no tortious conduct by any City employee. Her complaint states that "[o]n or about December 11, 1987, members of the Bartholomew County Sheriff's Dept. and/or

lawfulness must be apparent." *Anderson v. Cremation* (1986), 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531. Without an allegation of activity sufficient to withstand a summary judgment motion, there can be no violation of clearly established rights.

other individuals whose names are presently unknown to plaintiffs conducted a search of Davis' (sic) home." *Record* at 10 (Complaint, ¶ 8). At the summary judgment hearing, Hupp testified that Detective John Meyers of the Columbus Police Department was present at the scene of the search and accompanied the Sheriff's deputy who transported Hupp to jail after her arrest. Nowhere beyond this allegation of mere presence, however, has she alleged Detective Meyers or any other member of the Columbus Police Department took any actions at all.

As it was with Prosecutor Koenig's motion for summary judgment, so it is with the City's: to withstand the motion, Hupp was required to come forward with some evidence of wrongdoing. *Tucher, supra.* Standing alone, the allegation of Detective Meyers's presence is wholly insufficient to raise a reasonable inference that he or any other member of the Columbus Police Department engaged in any tortious conduct.

## DETECTIVE MEYERS

The summary judgment hearing at which Hupp testified to Detective Meyers's presence at the scene was held on May 23, 1990, several months after the statute of limitations for Hupp's claims had expired. IND.CODE 34–1–2–2(1). During the hearing, she moved for leave to amend her complaint to substitute the names of Detective Meyers and other Columbus Police Department officers for the John Doe claim against "individuals whose names are presently unknown" we discussed above. She also moved for the relation back of the amendment to the date of her initial filing. The trial court denied the motions.

 The relation back of amended complaints is governed by T.R. 15(C).[8] After the statute of limitations has run, a

plaintiff may add an entirely new defendant only after demonstrating the conditions of T.R. 15(C) have been satisfied. *Berns Const. Co., Inc. v. Miller* (1986), Ind.App., 491 N.E.2d 565, 573, *aff'd*, 516 N.E.2d 1053. Whether to grant a T.R. 15(C) motion is a matter for the trial court's discretion. *Anderson v. Scott* (1991), Ind.App., 575 N.E.2d 672. Never, however, does the filing of a John Doe complaint toll the statute of limitations as applied to the subsequently named real defendant. *Berns Const. Co., Inc., supra,* at 573. *See also Sassi v. Breier* (7th Cir. 1978), 584 F.2d 234 (complaint dismissed— plaintiff failed to show newly named defendant police officers had notice of John Doe claim).

[15] Hupp's attempt to substitute Detective Meyers for the unnamed parties in her initial complaint, therefore, is time-barred, and the trial court properly refused to allow amendment of the complaint. The same is true for the other officers Hupp sought to add. Moreover, her claim against those other officers fails because, to this day, she has not attempted to name those officers. Relation back is not allowed when the plaintiff has no knowledge of the proper party. *Berns Const. Co., Inc., supra,* at 573.

## CONCLUSION

The trial court is in all things affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.

---

8. T.R. 15(C) provides in pertinent part:
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment: (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.