

**FILED**

Aug 23 2016, 6:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Matthew J. Schad
George A. Budd, V
Schad & Schad, P.C.
New Albany, Indiana

ATTORNEYS FOR APPELLEES

R. Jeffrey Lowe
Crystal G. Rowe
New Albany, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Kyleigh Nolan,

*Appellant-Plaintiff,*

v.

Clarksville Police Department and Town of Clarksville, Indiana,

*Appellees-Defendants.*

August 23, 2016

Court of Appeals Case No.
10A04-1510-CT-1824

Appeal from the Clark Circuit Court

The Honorable Susan L. Orth, Special Judge

Trial Court Cause No.
10C04-1403-CT-44

**Vaidik, Chief Judge.**

# Case Summary

Nineteen-year-old Kyleigh Nolan volunteered to play the role of a hostage in a training exercise being conducted by the Clarksville Police Department. She was injured and later sued the police department and the Town of Clarksville. The trial court granted summary judgment for the defendants after finding that Nolan had failed to provide sufficient pre-suit notice of her claim pursuant to the Indiana Tort Claims Act ("ITCA"). While we agree that Nolan failed to comply with the statutory-notice requirement, we also conclude that there is a genuine issue of material fact as to whether the defendants, by virtue of their own conduct following the incident, are estopped from asserting Nolan's non-compliance as a defense. We therefore affirm in part and reverse in part the grant of summary judgment in favor of the defendants. On remand, Nolan is entitled to present her estoppel claim to the jury at trial.

# Facts and Procedural History

In accordance with the standard of review in summary-judgment matters, we begin by reciting the evidence most favorable to the non-moving party, Nolan. In June 2012, Nolan was employed at a store in the Green Tree Mall in Clarksville. The Clarksville Police Department was conducting a training exercise at the mall, and Nolan agreed to act as a hostage. As the hostage scenario was being played out, Nolan was involved in a collision with officers, and her nose was broken. The police department called for an ambulance, but Nolan, who was nineteen at the time, declined assistance and called her mother

instead. Nolan's mother went to the mall, and Chief Mark Palmer, who was present for the training exercise, told Nolan and her mother that the police department would cover Nolan's medical expenses relating to the accident. Chief Palmer also told them that bills should be sent to the Town of Clarksville and that "if they sent them to the Police Department the office manager would forward them to the Town's insurance representative." Appellant's App. p. 162.

[3] Over the next few months, Nolan continued to contact Chief Palmer, and her mother did the same. Nolan attempted to reach him via e-mail and telephone in mid-to-late July and then went to the police station in August and tried, but was unable, to meet with him to provide medical bills. Nolan's mother e-mailed with Chief Palmer and met with him in person, at which time he told her that "the Clarksville Police would be taking care of the bills and not to worry about it." *Id.* at 127. Nolan's mother later brought some bills to the police department and gave them to a receptionist, who said that she would give them to Chief Palmer. However, neither the police department nor the Town of Clarksville has ever paid any of Nolan's medical bills.

[4] In early 2014, Nolan filed a lawsuit against the police department and the town (collectively, "the Town"). The Town filed a motion for summary judgment, contending that Nolan had not provided pre-suit notice of her claim within 180 days of the incident, as required by the ITCA, and that her claim is therefore barred. *See* Ind. Code § 34-13-3-8 ("[A] claim against a political subdivision is

barred unless notice is filed with . . . the governing body of that political subdivision . . . within one hundred eighty (180) days after the loss occurs.").

[5] In response, Nolan conceded that she had not filed a "formal" notice of claim but argued that her contacts with the Town amounted to substantial compliance with the statutory requirement. Alternatively, she argued that, even if she had not substantially complied with the ITCA, the Town led her to believe that formal notice would not be necessary and should therefore be estopped from asserting non-compliance as a defense.

[6] After hearing oral argument from counsel, the trial court granted summary judgment in favor of the Town, concluding that Nolan "did not provide sufficient notice to Defendants until well after th[e] statutory period had expired." Appellant's App. p. 16. The court did not specifically address Nolan's estoppel claim in its order.

[7] Nolan now appeals.

# Discussion and Decision

[8] Nolan contends that the trial court erred by concluding that she failed to comply with the pre-suit notice requirement of the ITCA and by granting summary judgment in favor of the Town on that basis. It is well established that in reviewing a grant of summary judgment, we address the issues de novo, giving no deference to the trial court's decision. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009); *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733,

736-37 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. Nonetheless, both parties agree that we are to review a summary judgment based on non-compliance with the ITCA using the deferential "negative judgment" standard, under which we reverse "only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court." *Infinity Products, Inc. v. Quandt*, 810 N.E.2d 1028, 1032 (Ind. 2004) (quoting *DiMizio v. Romo*, 756 N.E.2d 1018, 1021 (Ind. Ct. App. 2001), *trans. denied*), *reh'g denied*. In support of this proposition, the Town cites *Hupp v. Hill*, 576 N.E.2d 1320 (Ind. Ct. App. 1991), and Nolan cites *Fowler v. Brewer*, 773 N.E.2d 858 (Ind. Ct. App. 2002), *trans. denied*, where we relied on *Hupp*.

[9] It is true that, in *Hupp*, a panel of this Court stated that judgments based on non-compliance with the ITCA "are subject to review as negative judgments[.]" 576 N.E.2d at 1324. For that proposition, the panel cited this Court's earlier decision in *Dunn v. City of Indianapolis*, 451 N.E.2d 1122 (Ind. Ct. App. 1983), *reh'g denied*. *Id*. We read *Dunn* more narrowly. In *Dunn*, the city raised the ITCA defense by way of a motion for summary judgment. 451 N.E.2d at 1123-24. At the plaintiff's request, the trial court set a hearing on the motion. *Id*. Before the hearing, however, the trial court ordered the parties to "stipulate all facts necessary for hearing on [the] Tort Claims notice and [to] be ready to present any other facts at the hearing" and to "prepare [the] factual issue." *Id*. at 1124. At the hearing, witnesses were sworn and testified. *Id*. Thereafter, the trial court issued findings of fact and concluded that the plaintiff had failed to comply with ITCA notice requirements. *Id*. On appeal, we explained, "The

record clearly indicates that both the parties and the court considered the hearing an evidentiary hearing to resolve the notice issue. The facts were disputed by the parties and weighed by the court." *Id*. at 1124-25. We then went on to review and affirm the trial court's ruling under the negative-judgment standard. *Id*. at 1125-26. In short, we applied the negative-judgment standard because the trial court, after putting the parties on notice, held an evidentiary hearing, weighed the evidence, and made findings of fact. *See also Lett v. State*, 519 N.E.2d 749, 750 (Ind. Ct. App. 1988) (citing *Dunn* for negative-judgment standard after trial court held evidentiary hearing regarding ITCA compliance), *reh'g denied*.

[10] *Dunn*, then, does not stand for the proposition that *all* judgments based on non-compliance with the ITCA "are subject to review as negative judgments[.]" *Hupp*, 576 N.E.2d at 1324.[1] The negative-judgment standard only applies when the trial court has weighed the evidence and made factual determinations. *See Dunn*, 451 N.E.2d at 1123-26. When, on the other hand, the trial court grants summary judgment based strictly on the parties' briefs, designated summary-judgment evidence, and oral arguments, we apply the traditional, de novo summary-judgment standard of review. *See, e.g., Lyons v. Richmond Cmty. Sch.*

---

[1] There are other instances in which we have cited the negative-judgment standard in ITCA summary-judgment cases, all of which can be traced back to *Hupp*. *See, e.g., Warrick Cnty. ex rel. Conner v. Hill*, 973 N.E.2d 1138, 1142 (Ind. Ct. App. 2012), *trans. denied*; *Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. Ct. App. 2007), *trans. denied*; *Fowler*, 773 N.E.2d at 861; *Porter v. Fort Wayne Cmty. Sch.*, 743 N.E.2d 341, 344 (Ind. Ct. App. 2001), *trans. denied*; *Gregor v. Szarmach*, 706 N.E.2d 240, 241-42 (Ind. Ct. App. 1999); *Brunton v. Porter Mem'l Hosp. Ambulance Serv.*, 647 N.E.2d 636, 639 (Ind. Ct. App. 1994); *see also Hasty v. Floyd Mem'l Hospital*, 612 N.E.2d 119, 121 (Ind. Ct. App. 1992) (citing negative-judgment standard in motion-to-dismiss context).

*Corp.*, 19 N.E.3d 254, 259 (Ind. 2014); *Schoettmer v. Wright*, 992 N.E.2d 702, 705 (Ind. 2013).

[11] Here, the parties filed their summary-judgment papers, their attorneys made oral arguments at a typical summary-judgment hearing, and there is no indication that the trial court weighed the evidence or resolved disputed issues of fact. Therefore, we will review the trial court's decision de novo. *See Williams*, 914 N.E.2d at 761; *Swanson Servs. Corp.*, 820 N.E.2d at 736-37. We will affirm the grant of summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "In reviewing the record, we construe all reasonable inferences in favor of the nonmoving party." *Gruber v. YMCA of Greater Indianapolis*, 34 N.E.3d 264, 266 (Ind. Ct. App. 2015).

# I. Substantial Compliance

[12] Nolan's first argument is that even though she did not file a notice with the Town in accordance with the ITCA, *see* I.C. § 34-13-3-8, the contacts that she and her mother had with the Town, including the delivery of certain medical bills to the police station, put the Town on notice that a claim might be filed and therefore amounted to substantial compliance with the statutory-notice requirement. Under the doctrine of substantial compliance, the failure to fully satisfy the precise notice requirements of the ITCA is excused as long as "the *purpose* of the notice requirement is satisfied." *Schoettmer*, 992 N.E.2d at 707

(emphasis added). However, our Supreme Court recently clarified that the doctrine can only be invoked by a claimant who has filed a timely notice-of-claim that is technically defective, not by a claimant who has filed no notice or late notice. *Lyons*, 19 N.E.3d at 259 (summarily affirming this Court's holding that "substantial compliance cannot exist when the claimant took no steps whatsoever to comply with the notice statute" and that claimants who "filed no notice-of-claim—defective or otherwise—within 180 days" of loss "did not substantially comply with the ITCA notice requirement"). Here, Nolan, like the claimants in *Lyons*, "filed no notice-of-claim—defective or otherwise—within 180 days" of the incident. As such, she cannot prevail under the doctrine of substantial compliance, and we affirm the trial court's grant of summary judgment in favor of the Town on this issue.[2]

## II. Estoppel

[13] While Nolan cannot show that she substantially complied with the ITCA notice requirement, we agree with her that there is a genuine issue of material fact as to whether the Town should be estopped from asserting her non-compliance as a defense. In the ITCA-notice context, the doctrine of estoppel "focuses on representations made by the defendant or its agents to the plaintiff, which

---

[2] Nolan's substantial-compliance argument is based in part on the fact that on December 3, 2012, Ingenix Subrogation Services wrote to the police department to explain that it had been retained by Nolan's health insurer "to pursue a recovery for medical benefits that have been or may be paid by them on behalf of [Nolan] for the treatment of injuries sustained arising out of the above captioned injury." Appellant's App. p. 146. We agree with the Town that this letter did not constitute notice that Nolan, herself, would be filing a claim. To the contrary, one reasonable inference to be drawn from the letter is that Nolan had her medical expenses paid by her own insurer and, as a result, would *not* be filing a claim against the Town.

induce the plaintiff reasonably to believe that formal notice is unnecessary." *Allen v. Lake Cnty. Jail*, 496 N.E.2d 412, 415 n.3 (Ind. Ct. App. 1986), *reh'g denied*.[3]

[14] Our Supreme Court recently explained that a plaintiff claiming estoppel in response to an ITCA-notice defense "must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change [its] position prejudicially." *Schoettmer*, 992 N.E.2d at 709. We conclude that Nolan designated ample evidence to survive summary judgment on these three elements.

[15] As to the first element, there is evidence that Chief Palmer represented that the Town would cover Nolan's medical expenses and that Nolan was "not to worry about it," while there is no evidence that Nolan knew or had any way of discovering that the Town was not actually going to pay. Regarding the second and third elements, there is evidence that Nolan acted in reliance upon Chief Palmer's statements to her detriment. In the months following the accident and

---

[3] Such claims generally fall into one of two categories: (1) claims that the political-subdivision defendant disguised or failed to disclose its governmental status, *see, e.g., Schoettmer*, 992 N.E.2d at 709; *Gregor v. Szarmach*, 706 N.E.2d 240, 243 (Ind. Ct. App. 1999), and (2) claims that a *known* political-subdivision defendant made a representation that led the plaintiff to believe that the matter would be settled without the need for formal, adversarial procedures, *see, e.g., Delaware Cnty. v. Powell*, 272 Ind. 82, 393 N.E.2d 190, 192 (1979); *Allen*, 496 N.E.2d at 416-17; *Coghill v. Badger*, 418 N.E.2d 1201 (Ind. Ct. App. 1981), *reh'g denied*. Because Nolan's claim—that she acted in reliance on Chief Palmer's statements that her medical bills would be paid—falls into the second category, the fact that "the Clarksville Police did not attempt to hide their governmental or political-subdivision status," Appellees' Br. p. 38, is irrelevant.

Chief Palmer's initial promise to pay, instead of filing a tort notice or a lawsuit, Nolan e-mailed and called him and eventually went to the police station with medical bills in hand, hoping to meet with him—in accordance with Chief Palmer's instruction to submit medical bills to the Town. In addition, Nolan's mother corresponded with Chief Palmer via e-mail, spoke with him in person, and gave medical bills to a receptionist who said that they would be given to Chief Palmer. Because this evidence could reasonably support a finding of estoppel, summary judgment is inappropriate. *See Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind. 1996) ("Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate.").

[16] The Town's attacks on Nolan's estoppel claim are without merit. It asserts that "Nolan apparently did not know of the specific conversations or alleged assurances that were purportedly made by Chief Palmer to her mother" and that, therefore, "Chief Palmer's alleged communications to Nolan's mother do not weigh into the equitable-estoppel analysis." Appellees' Br. p. 36. In support of this argument, the Town notes that Nolan's affidavit only generally refers to her mother's contact with Chief Palmer and does not specifically state that her mother told her about the representations that Chief Palmer made to Nolan's mother in the months after the accident—including that "the Clarksville Police would be taking care of the bills and not to worry about it." We first note that even if Nolan's mother did not share these assurances with Nolan, Chief Palmer's promise of payment on the night of the accident, to both

Nolan and her mother, would be sufficient to permit Nolan's estoppel claim to go forward. Furthermore, given Nolan's age and the active involvement of her mother in this ordeal, beginning at the mall immediately after the accident, it would be reasonable to infer that Nolan's mother was acting as Nolan's agent and made Nolan aware of all communications with Chief Palmer. Therefore, Chief Palmer's communications with Nolan's mother in the months following the accident are relevant to Nolan's estoppel claim.

[17] The Town also asserts that Nolan cannot satisfy the detrimental-reliance prongs because there is no evidence that "she failed to file the required tort-claim notices because Chief Palmer told her Clarksville Police would pay her medical bills"—in other words, evidence that Nolan would have filed notice *but for* Chief Palmer's representations. Appellees' Br. p. 35. The Town does not cite, and we are not aware of, any authority that stands for the proposition that an ITCA plaintiff claiming estoppel must show that she was aware of the notice requirement and would have filed notice but for some conduct or representation by the political subdivision. Nolan need only show that she detrimentally relied upon Chief Palmer's representations. *See Schoettmer*, 992 N.E.2d at 709. The evidence that Nolan and her mother attempted to work with Chief Palmer and to follow his instructions regarding the submission of medical bills, rather than filing a notice of claim, is sufficient to create a genuine issue of material fact on the detrimental-reliance elements.

[18] Finally, the defendants assert that they are distinct entities, that Nolan's specific factual allegations relate only to the police department, and that the Town of

Clarksville is entitled to summary judgment even if the police department is not. The Town did not raise this argument in its motion for summary judgment, so it is waived. *See Poulard v. Lauth*, 793 N.E.2d 1120, 1123 (Ind. Ct. App. 2003) ("Issues not raised before the trial court on a summary judgment motion cannot be argued for the first time on appeal and are waived."). In any event, they cite no authority in support of their assertion, and we are not persuaded. Tellingly, the defendants do not allege that the Town of Clarksville was not made aware of Nolan's injury or her efforts to have her medical bills paid. In Clarksville, as in most municipalities, the town and the police department are closely affiliated, as evidenced by their admission in discovery that Chief Palmer told Nolan and her mother "that any bills that come out of [Nolan's] visit to her family doctor *should be sent to the Town of Clarksville* and if they sent them to the Police Department the office manager *would forward them to the Town's insurance representative*." Appellant's App. p. 162 (emphasis added). Our disposition of Nolan's estoppel claim applies to both defendants.

[19]    In sum, Chief Palmer's alleged statements, as an agent of the Town, were representations that could very well have led Nolan to believe that formal notice was unnecessary and to forego filing such notice. Therefore, summary judgment is inappropriate on the issue of estoppel. *See, e.g., Delaware Cnty. v. Powell*, 272 Ind. 82, 393 N.E.2d 190, 192 (1979) (reversing summary judgment on estoppel where county's insurer admitted county's liability, made payments to plaintiff, and told plaintiff that county "would take care of everything"); *Allen*, 496 N.E.2d at 416-17 (reversing summary judgment on estoppel where

there was evidence that agent of county jail "actively represented—indeed promised—that Allen would be fully reimbursed for his loss, in effect representing that litigation would be rendered unnecessary by settlement"); *see also Coghill v. Badger*, 418 N.E.2d 1201, 1208-09 (Ind. Ct. App. 1981) (affirming grant of summary judgment on estoppel where there was no representation by the defendants that could "reasonably be construed as a promise"), *reh'g denied*.

[20] On remand, Nolan is entitled to present her estoppel claim to the jury at trial. In *Lyons*, our Supreme Court found genuine issues of material fact on the plaintiffs' claim that "the discovery rule should apply to excuse [their] noncompliance with the ITCA notice requirement" and their alternative claim that "the defendants should be *estopped* from asserting their ITCA notice defense because they fraudulently concealed the existence of the Lyonses' claims." 19 N.E.3d at 260-61 (emphasis added). In addressing "how the trial court should proceed upon remand," the Court explained that the issues should be decided by the jury:

> The question of whether a plaintiff has complied with the requirements of the ITCA is one of law, *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013), but the answer may depend upon the resolution of disputed facts. *Gregor v. Szarmach*, 706 N.E.2d 240, 241 (Ind. Ct. App. 1999). And the application of the discovery rule necessarily involves questions of fact. *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992) (stating that whether the plaintiffs knew or "in the exercise of ordinary diligence" could have known of the defendant's alleged negligence was "a question of fact for the factfinder to answer"). When the discovery rule applies, the time for filing does not begin to run until the plaintiff knows or in the exercise of

ordinary diligence should know of the tort. *Id*. Similarly, the application of the fraudulent concealment doctrine is a question of equity, but it may depend upon questions of fact, which are properly answered by the fact-finder. *Fager* [*v. Hundt*, 610 N.E.2d 246, 253 n.5 (Ind. 1993) ("While the fraudulent concealment exception is an equitable doctrine, the relevant facts may be determined by a jury in the event of trial."). When the doctrine applies, a plaintiff has a reasonable time after discovery of the tort to bring his action. *Id*. at 251.

*Id*. at 262.

[21] We recognize that our Supreme Court previously held that an estoppel claim in the ITCA-notice context must be resolved by the trial court before trial. *Powell*, 393 N.E.2d at 192; *see also Allen*, 496 N.E.2d at 417 (relying on *Powell* in reversing summary judgment on plaintiff's estoppel claim and remanding for determination by "trial judge as trier of fact"). However, we see no basis on which to treat Nolan's estoppel claim any differently than the Supreme Court treated the fraudulent-concealment/estoppel claim made by the plaintiffs in *Lyons*.[4]

[22] Affirmed in part, reversed in part, and remanded for further proceedings.

Barnes, J., and Mathias, J., concur.

---

[4] At times, the Town seems to contend that Nolan's estoppel claim should fail even if all evidence in her favor is believed and that reserving the issue for trial would therefore be unnecessary. However, we have already determined that a finding of estoppel would be reasonable under the evidence designated by Nolan. Again, even where the facts are undisputed, summary judgment is inappropriate where undisputed facts lead to conflicting material inferences. *Butler*, 668 N.E.2d at 1228.