## WALLACE *v.* MERTZ, ADMINISTRATOR, ET AL.

### [No. 12,707.  Filed May 17, 1927.]

1. CONTRACTS.—*Contract must be reasonably certain to be enforceable.*—A contract, to be valid and enforceable, must be reasonably definite and certain, so that the intention of the parties can be ascertained.  p. 190.

2. CONTRACTS.—*Contracts will not be declared void for uncertainty when their meaning can be ascertained.*—Courts will not declare contracts entered into in good faith void and unenforceable for uncertainty when their meaning can be determined by recognized and reasonable rules of construction.  p. 190.

3. CONTRACTS.—A construction of a contract that will uphold it should be adopted rather than one which will defeat it.  p. 190.

4. CONTRACTS.—*Writings between the same parties relating to same subject-matter as contract must be construed with it.*—It is a well-established rule for the construction of contracts that where other writings between the parties relate to the same subject-matter as the contract, they must be taken as parts of the same transaction and construed together for the purpose of determining the true meaning of the contract.  p. 190.

5. LANDLORD AND TENANT.—*Time for commencement of lease fixed by reference to agreement which did fix it.*—A lease contract which did not fix any time for the commencement of the lease was made certain by reference to a contemporaneous agreement which did fix such time.  p. 191.

6. CONTRACTS.—An agreement to make a future agreement cannot be enforced.  p. 191.

7. LANDLORD AND TENANT.—*Agreement to execute formal lease with "the usual stipulations" valid and enforceable.*—An agreement by a landowner to lease certain designated premises on terms agreed on, but providing that a formal lease should be drafted, containing "the usual stipulations" concerning the rights and remedies of the parties, was not merely an agreement to make a future agreement, but was a present agreement to make a formal lease with the usual stipulations therein.  p. 191.

8. LANDLORD AND TENANT.—*Lease contract not lacking in mutuality though not to be binding unless agreement with present tenant was completed.*—An agreement by a landowner to execute a lease of occupied business property, which obligated the lessor to purchase present lessee's stock in the company occupying the same and to perform other acts agreed to be done to accomplish the vacation of the premises, was not lacking in

mutuality, though the contract was not to be binding unless agreement with present lessee was completed.    p. 193.

9. LANDLORD AND TENANT.—*Part performance of contract by lessor before repudiation by lessees obviated any question as to mutuality of the lease.*—Any question as to the mutuality of a lease contract was obviated by lessor's part performance of the obligations on his part before repudiation of the contract by the lessees, full performance being prevented by such repudiation.    p. 193.

10. CONTRACTS.—The fact that the promise given for a promise is dependent on a condition does not affect its validity as a consideration.    p. 195.

11. LANDLORD AND TENANT.—*Failure of lessor to require lessees to refer certain prospective business to present occupants in their new location would not defeat lessor's recovery for repudiation of contract.*—Where lessees abandoned leased premises and repudiated the lease contract, they would not be heard to complain that the lessor had not performed a condition of the contract that he was to require the lessees to refer certain prospective business to the present occupants of the premises in their new location, and thus defeat lessor's recovery for their breach of contract.    p. 195.

From Tippecanoe Circuit Court; *Homer W. Hennegar*, Judge.

Claim by Roy W. Wallace against the estate of William Mertz, deceased, Carl O. Mertz, administrator, in which E. H. Burt was made a party defendant. From a judgment for defendants, the plaintiff appeals. *Reversed.* By the court in banc.

*Jones, Davidson & Patrick* and *Randolph & Randolph*, for appellant.

*Gaylord & Sills* and *Joseph B. Ross*, for appellees.

NICHOLS, J.—This is an action by appellant against appellees for breach of a written contract entered into between appellant and decedent Mertz and appellee Burt, whereby appellant agreed to lease certain premises owned by him to said parties upon the terms and conditions specified in said contract and they, in turn, agreed to accept a lease of said premises from appellant.

The action was originally filed as a claim against the estate of decedent Mertz and, upon such claim being disallowed by appellee Mertz, administrator of the estate of decedent Mertz, the cause was transferred to the trial docket and, upon motion of appellee Mertz, appellee Burt was made a party defendant thereto. Appellees filed separate and several demurrers to appellant's claim, which demurrers were sustained by the court and final judgment rendered thereon against appellant, from which rulings and judgment this appeal, appellant assigning as error the court's ruling on the demurrers to the complaint. It is averred in the complaint, in substance, that in September, 1923, the decedent and Burt entered into a written contract with appellant, which reads as follows, to wit:

"September 27th, 1923

"Ed Burt, William Mertz,
"Lafayette, Indiana.
"Gentlemen:—

"Providing the agreement drawn up by Mr. J. B. Brady, which you have just read, can be completed, I propose to lease my garage building at Fourth and South streets to you for a period of five years upon the following terms:

"You to pay $450 monthly rental in advance on the first of each month. Any change or alteration in the building to be subject to my written approval.

"I retain 6 ft. x 10 ft. space in office near Fourth street entrance and to retain the Indiana Refining Co., lease, also one car space on first floor. Office and car space to be retained for entire term of lease. I also retain space occupied by paint shop until present orders are completed. I am to have one car space on second floor.

"The machinery and equipment now in the building, attached or detached, belongs to the Wallace Motor Co., and Brady Motor Co., and is not to be included in the lease. It is however agreed that you will take over certain Wallace Motor Company equipment, including everything on the list submit-

ted to you at $3,250.  One-half cash, balance 6 months note at 6 per cent.

"This lease to be formally drafted and to contain the usual stipulations concerning the rights and remedies of all parties.

"Very truly yours,

"R. W. Wallace, (Appellant).

"Accepted:
  "E. H. Burt,
  "W. F. Mertz."

That the Brady agreement referred to in the contract had been drafted on September 27, 1923, and was read by the decedent and appellee Burt prior to the execution of such contract; that said Brady agreement was completed and executed on September 29 as drafted on September 27, 1923; that a copy thereof is by exhibit made a part of the complaint; that on September 29, 1923, the decedent and appellee Burt were notified and had knowledge that the Brady agreement had been executed.  That when the contract sued on was executed by the decedent and appellee Burt, they were then occupying the upper story of the building mentioned in said contract and were occupying the office in said building and using the telephones therein; that the decedent and appellee Burt continued to occupy said premises after the above agreement of September 27 was executed and after the Brady agreement was executed.  That appellant performed all the conditions and the requirements of such contract of September 27 on his part to be performed.  That on or about October 3, 1923, after the contract sued on had been executed, and after the Brady agreement had been executed, the decedent and appellee Burt repudiated and renounced the entire contract sued on, refused to perform it and moved out of and abandoned the premises.  That, by reason of the repudiation and renunciation of said agreement and the abandonment of said premises, ap-.

pellant was damaged in the total sum of $7,672.40, which damages are itemized in the complaint.

The Brady agreement reads:

"Sept. 29, 1923.

"In consideration of the payment of $1,000 receipt of which is hereby acknowledged and of other considerations, R. W. Wallace hereinafter known as the first party, J. B. Brady, hereinafter known as the second party, and Brady Motor Company hereinafter known as the third party agree that,

"Whereas, first party now has opportunity of leasing the entire Wallace Motor Company Building, Fourth and South streets, Lafayette, Indiana, to the Burt-Mertz Company and therefore desires immediate possession of all that part of said building, lease for which is now held by Brady Motor Company, Witnesseth:

"1. The third party consents to and cancels its lease contract dated June 1, 1923, for said portion of said building upon condition that the first party purchase from second party, President of the Brady Motor Co. his 63 shares of stock of the Wallace Motor Company and assume the obligations as set forth in the agreement entered into by the stockholders of the Wallace Motor Co., dated May 29, 1923, and that this agreement be approved by all stockholders of the Wallace Motor Company.

"2. Said J. B. Brady hereby sells said 63 shares of stock to and said R. W. Wallace hereby purchases said stock and assumes said obligations of said Brady, for and in consideration of said cancellation of said lease by the third party, and payment of $1,000 by second party.

"3. First party will permit of signs announcing new location of Brady Motor Company to be placed on building of Wallace Motor Company for a period of one month after vacation of property.

"4. First party will refer and require the Burt-Mertz Motor Company to refer all Nash business to the Brady Motor Company at its new location.

"5. The Brady Motor Company will give possession of the Wallace Motor Company building within ten days after securing possession of suitable new quarters, and in no case later than Dec. 1, 1923. Rent to cease on vacation of premises.

"6. This agreement to be approved by the stockholders of the Wallace Motor Company.
   "Approved.

                          "R. W. Wallace,
                          "J. B. Brady,
                          "R. W. Duncan,
                             "Stockholders of Wallace
                                 Motor Co.,
                          "R. W. Wallace,
                          "Brady Motor Company,
                          "J. B. Brady, Pres.,
                          "J. B. Brady."

It is appellees' contention that the letter from appellant to Burt and Mertz, together with the acceptance indorsed thereon, was but a conditional proposal, and that it amounted only to a preliminary negotiation looking to the possible execution of a lease, and that no one was bound by it. In other words, that it did not constitute a contract; that it was too uncertain and indefinite, that it did not contain mutual promises, and was void for the want of mutuality of obligation, and that the complaint did not show performance by appellant and breach by Burt and Mertz. It is the law that in order that a contract be valid and enforceable, it must be reasonably definite and certain, so that the intention of the parties can be ascertained. But courts will not declare contracts entered into in good faith void and unenforceable when their meaning can be determined by recognized and reasonable rules of construction, and if the contract be capable of a construction that will uphold it, it is to be adopted rather than one which will defeat it. *Schreiber* v. *Butler* (1882), 84 Ind. 576.

In the letter, the acceptance of which appellant contends constitutes the contract, there is a direct reference to the Brady agreement with the statement that appellees had just read the same, and with a provision as to the completion of such Brady

agreement. It is a well-established rule of construction that where instruments under present consideration relate to the same subject-matter, they must be taken as parts of the same transaction, and construed together for the purpose of determining the true meaning of the contract between the parties. *Lucas* v. *Hendrix* (1883), 92 Ind. 54.

It is true that the time of the commencement of the lease is not specified in the contract, but in the Brady agreement, after referring to the opportunity which appellant had to lease the premises to the Burt-Mertz company, which company desired immediate possession, it was provided that possession would be given within ten days after securing suitable new quarters by the Brady company, and in any event not later than December 1, 1923. Thus, by reference to the Brady agreement, the time of the commencement is fixed. Appellees contend that the provision in the contract that the lease should be formally drafted and contain the usual stipulations concerning the rights and remedies of the parties, amounted to but an agreement to make an agreement, and that, as such, it could not be enforced, citing authorities to sustain their contention. It is unquestionably the law that an agreement to make a future agreement cannot be enforced; but we do not interpret this stipulation as an agreement to further negotiate, but to make a formal lease, both parties recognizing that such leases had certain "usual stipulations" susceptible of determination, by proof if necessary. We cannot better express the rule that should control as to this question than it is expressed in *Mercer* v. *Payne & Carnaby Co.* (1923), 192 N. W. (Nebr.) 951, from which we quote as follows: "In addition to other terms, the contract contains an expression of this form: 'The lease to contain the usual conditions of a ninety-nine year (99) lease.' This

clause as it appears on the face of the contract is the principal ground of demurrer. It is argued by defendants that the contract thus appears to be too indefinite and uncertain for enforcement by specific performance. The position is untenable. The words, 'usual conditions,' in the connection employed, refer to a usage or course of dealing on conditions applicable to the making of 99-year leases. By inserting the phrase quoted, both parties recognized the existence of a usage conforming to conditions having a definite import. For the purposes of the demurrer, it is proper to infer that the parties, in a matter of such magnitude, acted in good faith with reference to a usage which does not leave in doubt the 'usual conditions' of a 99-year lease. Usage in this sense is a provable fact and is so understood by courts of equity. It is different from a custom having the effect of law. For anything appearing on the face of the contract or the petition, the provision assailed as indefinite and uncertain may be reduced by evidence to definite terms. In respect to this phase of the contract for the lease, the petition contains the plea that 'the usual terms and conditions of said lease were fully and finally agreed upon by and between these plaintiffs and defendants.' In addition, the 'usual conditions,' to which the parties are alleged to have agreed are specifically set out in a form of lease attached to the petition. The issue is one of fact and not of law. This is an instance for the application of the familiar rule declaring, 'That is certain which by necessary reference is made certain.' Sufficient evidence of 'usual conditions' of a 99-year lease, to which the parties agreed, will, in that particular, leave nothing open for negotiation. The petition, therefore, is not demurrable on the ground that the contract pleaded is indefinite and uncertain in the respect mentioned."

It is true that in that case it appears that the usual

terms and conditions were agreed upon, thereby avoiding the necessity of proof, but the principle is there announced that the usage was a provable fact, and that is so understood by courts of equity.

Appellees next present that there was a lack of mutuality in the contract, and that it was without consideration. But such contention is untenable. 8, 9. There was an express offer on the part of appellant to lease the premises on certain terms and conditions, and an unqualified acceptance by appellants. This obligated both parties to do all things necessary to consummate the full execution and performance of the contract. There was a contingency, it is true, upon which performance must depend, and that was the completion of the Brady agreement. As Brady was in possession of a part of the building under a lease, there could be no performance unless he surrendered his rights. This, appellant impliedly and of necessity undertook to accomplish, and, in its accomplishment, he agreed to purchase sixty-three shares of Brady Motor Company stock, to perform certain other obligations, and to procure the approval of the stockholders of the Wallace Motor Company. If there was any question as to such mutuality of promises as to make a valid binding contract, it was obviated by this part performance on the part of appellant, before the contract was repudiated by appellees, full performance being prevented by the act of appellees in repudiating the contract.

Meeting appellees' argument that the contract had no legal force, because of the fact that its performance was based on a contingency, we quote from *Southern Pacific R. Co.* v. *Allen* (1896), 44 Pac. (Cal.) 796, in which there was involved a contract with a railroad company for the sale of certain real estate. The seller claimed title to the land but had not obtained a patent.

The company knew this fact, and entered into a contract to purchase the land when a patent was procured, which the seller undertook to procure. It was there contended that the contract lacked mutuality, and therefore had no legal force, because the performance was based on a contingency, and that the contract to buy was not based on a sufficient consideration. But the court said: "The defendant further contends that the contracts were void, *ab initio,* for want of mutuality of consideration, or amounted, at most, to mere offers to purchase on his part. This contention cannot be sustained. Plaintiff claimed title to these lands, but its title had not been perfected by patent. Defendant had the same opportunity as plaintiff of knowing the nature and probable validity of that claim. Under these circumstances, plaintiff agreed to convey to defendant when it should obtain a patent, and to permit defendant to enter into possession of the land at once. In consideration of these promises, defendant agreed to purchase when a patent should be issued, paid at once one-fifth of the purchase price and one year's interest on the balance, and agreed to pay the remainder (with interest thereon annually in advance) on or before a given date, with the right to a repayment without interest, in the event of an ultimate failure to obtain a patent. These promises were strictly mutual, and each constituted a sufficient consideration for the other. Plaintiff, by its contract, surrendered its right to contract with or sell to anyone else, and yielded to defendant the present right to possession which it claimed. These concessions were clearly a detriment to plaintiff, and, in a legal sense, an advantage to defendant, and they, therefore, furnished a consideration for defendant's promise to pay."

In 13 C. J., Contracts, §178, numerous authorities are cited to sustain the proposition that the fact

that the promise given for a promise is dependent on a condition does not affect its validity as consideration. In *Eichholtz* v. *Taylor* (1882), 88 Ind. 38, it is held that where one acts upon a conditional promise, performing the condition, the conditional promisor is bound thereby. We have no hesitation in holding that even if the contract to lease while yet executory was short of being a mutually binding bilateral contract, which we do not hold, appellant having consummated the execution and completion of the Brady contract, thereby performing his covenants so far as possible before the repudiation of the contract by appellee Burt and the decedent, they were thereby bound.

Appellees say that the Brady agreement was not completed. in that appellant had not required "the Burt-Mertz Motor Company to refer all Nash business to the Brady Motor Company in its new location."

Of course not, for the reason that the Burt-Mertz Motor Company, having repudiated the contract, abandoned the building. Further, to have required the Burt company to perform this act was to require it to do a thing which must be presumed to be a burden to it. We cannot hear appellees complain that they have been relieved of a burden.

Other questions are presented, but we regard them as technical rather than substantial, and hence do not consider them.

The judgment is reversed, with instruction to the court to overrule the demurrers to the complaint.

Dausman, J., absent.