**INDIANA DEPARTMENT OF COR-
RECTION, and Indiana Department
of Administration, Appellants–Defendants,**

v.

**SWANSON SERVICES
CORPORATION, Appellee–Plaintiff.**

No. 49A02–0404–CV–303.

Court of Appeals of Indiana.

Jan. 14, 2005.

Steve Carter, Attorney General of
Indiana, Joby Jerrells, Deputy Attorney

General, Indianapolis, IN, Attorneys For Appellants.

Jackie M. Bennett, Jr., Sommer Barnard Attorneys, PC, Indianapolis, IN, Attorney For Appellee.

## OPINION

BAKER, Judge.

Appellants-defendants Indiana Department of Correction (DOC) and Indiana Department of Administration (DOA) (collectively, DOC) appeal the trial court's grant of summary judgment in favor of appellee-plaintiff Swanson Services Corporation. Specifically, DOC raises three issues, which we consolidate and restate as: whether a valid contract existed between the parties.[1] Finding that a contract existed that required the State to accept Swanson's stand-alone food commissary system but that Swanson abandoned its right to stand on this term by making modifications for the interfacing of its system with DOC's computer system, we reverse the judgment of the trial court and remand with instructions to enter judgment for DOC in accordance with its cross-motion for summary judgment.[2]

## FACTS

In June 1999, DOA issued Broad Agency Announcement 99–75 (the BAA) on behalf of DOC, soliciting bids from persons interested in providing commissary services at the Chain O'Lakes and Miami Correctional Facilities. The purpose of a BAA is to inform prospective vendors of the scope of the work in sufficient detail so that they know exactly what the agency requires and so that they may respond to the BAA. Attachment C to the draft of the BAA prepared by DOC, which set forth the responsibilities of prospective vendors for the commissary services contract, did not include any requirement that the vendor's software system conform to or interface with any software utilized by DOC.

Swanson submitted its response to the BAA on June 30, 1999. Swanson's response proposed to install its own stand-alone system to furnish the commissary services, stating that, "Swanson will provide the hardware and software necessary to operate ORDSCAN, our OCR Order Entry System." Appellant's App. p. 62. Swanson's stand-alone system used a different format than DOC's system. On December 20, 1999, DOC recommended that the commissary services contract be awarded to Swanson. On December 9, 1999, Swanson met with DOC personnel and discussed DOC's commissary operation and an interface with DOC's software.

On December 30, 1999, DOC sent to Swanson the proposed contract for the commissary services. On January 3, 2000, Ed Bierer of Swanson requested that DOC change one provision of the contract relating to the commission to be paid to the State by Swanson. The original contract called for a 20.5% reimbursement from Chain O'Lakes Correctional Facility and a 25% reimbursement from Miami Correctional Facility. The revised contract called for a 20.1% reimbursement for both correctional facilities. Appellee's App. p. 73. DOC made the revision and sent the revised contract to Swanson, which signed the contract on March 10, 2000. Swanson then returned the contract to DOC, and officials of DOA, DOC, the Indiana State Budget Agency, and the Indiana Attorney

---

**1.** DOC also argued in its Appellant's Brief that the contract was ambiguous as to an essential term. However, the State abandoned that issue at oral argument.

**2.** Oral argument was heard on December 14, 2004 in Indianapolis. We thank counsel for their able presentations.

General's Office signed the contract, with the last signature being made on March 30, 2000.

On April 11, 2000, DOC convened a meeting to inform Swanson that it was going to have to modify its software to interface with DOC's software. Bierer of Swanson replied that there had been nothing in the BAA requiring that Swanson's system had to interface with any software of DOC. Nevertheless, on April 12, 2000, Swanson agreed to modify its software to interface with DOC's software.

On May 30, 2000, Swanson performed its first demonstration of its modified system at the Miami Correctional Facility. The system successfully processed some orders, but would not reject duplicate orders, allowed offenders to purchase more than their account allowed, and would not allow operators to perform weekly and monthly orders on the same day. On June 16, 2000, a second demonstration of Swanson's system was held at the Miami Correctional Facility, and the only problem was the system's inability to process duplicate orders if they had been entered into the system in succession.

On June 22, 2000, Carol Richards of DOC sent a memorandum to Amy McFadden of DOA in which she said, "The Department of Correction feels that it is in the best interest of the State of Indiana to terminate the contract between Swanson Services Corporation and the Indiana Department of Correction." Appellee's App. p. 99. In the memorandum, DOC noted that there were continuing problems with the interface and that Swanson had been unprepared for several meetings and unable to produce the product in the end. The memorandum further stated, "We wish to end further attempts to arrive at a solution and exercise our right to terminate the contract with 30 days notice to Swanson [pursuant to the contract's termination clause]." *Id.*

Personnel from DOC and Swanson met on July 13, 2000. Swanson explained that it had not received the necessary information to modify its system to interface with DOC's software and that the BAA had not required any interface at all. On July 25, 2000, Rebecca Reddick of DOA sent Swanson a letter stating that it was in the State's best interest to end the project and requesting that Swanson submit a detailed invoice of its work for her review. On September 18, 2000, Swanson submitted an invoice for $126,500 based on a total of 1,224 hours of work, but neither DOC nor DOA paid Swanson.

On July 12, 2001, Swanson filed a complaint against DOC and DOA, alleging breach of contract. The parties filed cross-motions for summary judgment on November 3, 2003. In their motion, DOC and DOA alleged that they were entitled to judgment as a matter of law because no contract existed between the parties. In its motion, Swanson alleged that it was entitled to judgment as a matter of law because DOC and DOA had breached their duty of good faith performance. The trial court held a hearing on the matter on January 12, 2004. On February 3, 2004, the trial court issued its order granting Swanson's motion for summary judgment and denying DOC and DOA's motion for summary judgment, finding that a valid contract existed and that Swanson was entitled to be compensated for the services it rendered prior to termination of the contract. DOC and DOA now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a trial court's ruling on a motion for summary judgment, we apply the same standard as the trial court. No

deference is given to the trial court's judgment. *Hutchens v. MP Realty Group–Sheffield Square Apartments,* 654 N.E.2d 35, 37 (Ind.Ct.App.1995). Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). Though summary judgment is clothed with a presumption of validity, "[t]he trial court's determination will be 'carefully scrutinized on appeal' to assure that the non-prevailing party is not improperly prevented from having his day in court." *Ind. Dep't of State Revenue v. Caylor–Nickel Clinic, P.C.,* 587 N.E.2d 1311, 1313 (Ind.1992). Cross-motions for summary judgment do not alter the standard of review. Instead, the reviewing court will "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.,* 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996). If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Dunaway v. Allstate Ins. Co.,* 813 N.E.2d 376, 380 (Ind. Ct.App.2004).

## II. Validity of the Contract

DOC argues that the trial court erred in granting summary judgment to Swanson because no contract existed. Specifically, DOC contends that the contract is invalid because there was no meeting of the minds as to an essential element of the contract, namely, the interface.

■ "An offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract." *Rodziewicz v. Waffco Heavy Duty Towing,* 763 N.E.2d 491, 493 (Ind.Ct.App.2002). To bring a contract into existence, an offer must be extended and the offeree must accept it, the communication of acceptance being crucial. Thus, a meeting of the minds between the contracting parties is essential to the formation of a contract. *Bain v. Bd. of Trustees of Starke Mem'l Hosp.,* 550 N.E.2d 106, 110 (Ind.Ct.App. 1990). "There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." *Carr v. Hoosier Photo Supplies, Inc.,* 441 N.E.2d 450, 455 (Ind.1982).

■ Upon reviewing the provisions of a contract, we will determine the parties' intent from the four corners of the contract. *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.,* 775 N.E.2d 1168, 1172–73 (Ind.Ct.App.2002). If the contract language is clear and unambiguous, we will give the language its plain and ordinary meaning. *Id.* But if the language is ambiguous, then we must determine its meaning by extrinsic evidence. *Id.* When interpreting a contract, we determine the parties' intent from their present and past business dealings. *Id.*

■ Our review of the record demonstrates that a valid contract existed between DOC and Swanson and that the interface was not a part of that contract. The BAA requires the selected respondent to "provid[e] all equipment and software necessary to read and transmit order forms." Appellant's App. p. 26. This was incorporated into the contract by reference. *Id.* at 86. Swanson was prepared to provide the necessary equipment and software by offering to install its stand-alone system. *Id.* at 62. The plain language of the BAA and the four corners of the contract required nothing more.

■ Even so, Swanson never attempted to install its stand-alone system. Instead, DOC wanted Swanson to install a system that would interface with DOC's existing system, and Swanson wanted the

lucrative government contract. Thus, Swanson agreed to create the interface. In so doing, Swanson abandoned its ability to argue that the stand-alone system was all that the BAA required. Swanson did not request that the contract be modified to compensate it for the work necessary to create the interface by asking for hourly fees or for an increased percentage of reimbursement under the contract. The contract states, "The Contractor shall not commence any additional work or the change of the scope of the work until authorized in writing by the State. No claim for additional compensation shall be made in the absence of a prior written approval executed by all signatories hereto." Appellant's App. p. 87. Because there were no written modifications to the contract, Swanson cannot recover under the contract for expenditures in creating the interface.

Essentially, Swanson requests that we affirm the trial court's decision in quantum meruit. However, Swanson did not raise the issue of an equitable remedy in its complaint. Rather, Swanson alleged three counts of breach of contract. Appellant's App. p. 10–17. Because Swanson did not raise this argument before the trial court, it is waived on appeal. *Frazier v. Mellowitz*, 804 N.E.2d 796, 801 n. 5 (Ind. Ct.App.2004).

Nevertheless, we note that Indiana Code section 4–13–2–14.2, requires that "a contract to which a state agency is party must be in writing." This is so in order to "preclude fraudulent claims that would likely arise when the word of one person is pitted against the word of another and to remove the temptation of perjury by preventing the rights of litigants from resting wholly on the precarious foundation of memory." *Coca–Cola Co. v. Babybacks Int'l, Inc.*, 806 N.E.2d 37, 42 (Ind.Ct. App.2004). In other words, the contract

must be written so that it is clear what the contract does and does not include. As Swanson has argued all along, the contract does not encompass the interface. Therefore, Swanson is asking for compensation for work that was not included in the written contract. Swanson cannot have it both ways. The work done on the interface was simply a cost of doing business. Swanson acknowledged as much at oral argument by agreeing that it would not have sought to recover for work done on the interface had the contract been terminated after eight years rather than after a few months.

In sum, we find that a valid contract existed that did not include the interface, but Swanson waived its ability to argue that the stand-alone system was all that the contract required by agreeing to create the interface. Because Swanson did not argue before the trial court that it should recover for work done on the interface in quantum meruit, we cannot now fashion an equitable remedy for any work done outside the contract.

The judgment of the trial court is reversed and remanded with instructions to enter judgment for DOC in accordance with its cross-motion for summary judgment.

SHARPNACK, J., and FRIEDLANDER, J., concur.