

**FILED**

09/06/2017, 11:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Matthew L. Kelsey
James R. Williams
Defur Voran LLP
Muncie, Indiana

ATTORNEY FOR APPELLEE

Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

RQAW Corporation,

*Appellant-Plaintiff,*

v.

Dearborn County, Indiana,

*Appellee-Defendant.*

September 6, 2017

Court of Appeals Case No.
58A01-1704-PL-745

Appeal from the Ohio Circuit
Court

The Honorable Clay M.
Kellerman, Special Judge

Trial Court Cause No.
58C01-1308-PL-3

**Bradford, Judge.**

# Case Summary

[1] In September of 2010, Appellant-Plaintiff RQAW Corporation ("RQAW") entered into a contract ("the Contract") with Appellee-Defendant Dearborn County, Indiana ("the County"), for certain architectural services connected to a project to renovate and expand the Dearborn County Jail ("the Project"). The Contract provided that RQAW would complete a Pre-Design Study, which would evaluate how to best meet the County's then-current and future needs. In relation to the Pre-Design Study, the parties agreed that the County would pay RQAW the sum of $90,000. The Contract further indicated that any further work and the cost for such work would be determined at a later time. RQAW completed the Pre-Design Study and the County paid RQAW the agreed-upon $90,000. After completion of the Pre-Design Study, the County decided to seek proposals from a number of architectural firms in connection to the design, bidding, and construction phases of the Project. Although RQAW submitted a proposal for this work, the County ultimately decided to move forward on the Project with a different architectural firm.

[2] RQAW subsequently filed suit, alleging that the County had breached its contract with RQAW. RQAW also alleged that it was entitled to recover damages under the equitable theory of unjust enrichment. As to RQAW's breach of contract claim, the parties filed competing motions for summary judgment. As to RQAW's equitable claim, the County filed a motion for judgment on the pleadings. Following a hearing, the trial court granted the County's motion for summary judgment, denied RQAW's motion for summary

judgment, and granted the County's motion for judgment on the pleadings. RQAW challenges these rulings on appeal. We affirm.

# Facts and Procedural History

[3] In 2010, the County was faced with the need to complete the Project, which would result in necessary updates and/or additions to the Dearborn County Jail. In an effort to determine how to best serve its then-current and future needs, on September 21, 2010, the County entered into a contract with RQAW for certain architectural services, including a Pre-Design Study. The Contract indicated that following completion of the Pre-Design Study, RQAW would provide the County with recommendations as to how RQAW believed the County could best meet its needs.

[4] The parties' Contract was made up of two standard AIA documents,[1] Document B102-2007 and Document B201-2007. Document B102-2007 provided a generalized scope of RQAW's basic services and made only a general reference to the phases of the Project which would come after the Pre-Design Study was completed. Document B102-2007 also provided certain provisions relating to the termination or suspension of the Contract. As to

---

[1] AIA is the acronym for the American Institute of Architects. The AIA had created a number of standard contracts for architectural work. These contracts meet nation-wide standards and may be used by architects across the country if the architects so choose. *See* https://www.aiacontracts.org/for-architects (last visited August 24, 2017).

termination of the Contract, Document B102-2007 provided, in relevant part, as follows:

> § 5.5 The [County] may terminate this Agreement upon not less than seven days' written notice to [RQAW] for the [County's] convenience and without cause.
> § 5.6 In the event of termination not the fault of [RQAW], [RQAW] shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Section 5.7.
> § 5.7 Termination Expenses are in addition to compensation for [RQAW's] services and include expenses directly attributable to termination for which [RQAW] is not otherwise compensated, plus an amount for [RQAW]'s anticipated profit on the value of the services not performed by [RQAW].

Appellant's App. Vol. III, p. 74. Document B201-2007 provided a detailed description of RQAW's obligations and the services that RQAW would provide under each of the phases of the project including: (1) the Pre-Design Study, (2) the schematic design phase, (3) the design development phase, (4) the construction documents phase, (5) the competitive bidding phase, and (6) the construction phase. It also detailed additional services that would be provided by RQAW throughout the project. Neither Document B102-2007 nor B201-2007 provided a detailed scope of work or specific cost for the phases of the Project that would come after the Pre-Design Study, stating that such information would be determined at a later date.

[5]     After completion of the Pre-Design Study, the Dearborn County Board of Commissioners, the arm of the County government which had been direct

contact with RQAW during the Pre-Design Study, presented RQAW's recommendations to the Dearborn County Council. The Council is the fiscal body for the County and is the body responsible for appropriating funds to pay for the Project.[2] At the Council's insistence, the Commissioners sought and accepted proposals for the design, bidding, and construction phases of the Project from a number of architectural firms, including RQAW. Although it believed that the Contract covered these additional phases, RQAW submitted a proposal for the scope of work that would be included in the design, bidding, and construction phases. The proposal also included the cost to complete these phases.

[6] Ultimately, the County chose the proposal submitted by another architectural firm. On July 19, 2012, the County sent a letter to RQAW informing RQAW that as RQAW had completed the Pre-Design Study and the $90,000 fee had been paid in full, the parties' Contract would be "deemed closed as of July 26, 2012." Appellant's App. Vol. IV, p. 73. The July 19, 2012 letter further stated that "[a]s a matter of record, the Dearborn County Board of Commissioners does not wish to extend the contract nor negotiate any fees with RQAW for any

---

[2] Absent funding approval from the Council, the Commissioners do not have the authority to spend the County's money. A representative of RQAW acknowledged as much stating that a project "dies" when the Council refuses to appropriate money for a project. Appellant's App. Vol. IV, p. 57. It is of note that as of the date that the parties entered into the Contract, the Council had only approved funding for the Pre-Design Study phase of the Project, and not for the entire Project.

future phases of the proposed project at this time." Appellant's App. Vol. IV, p. 73.

[7] RQAW subsequently filed suit, alleging that the County had breached the parties' Contract. In alleging that the County had breached the parties' Contract, RQAW acknowledged that both RQAW and the County met their obligations in connection to the Pre-Design Study. RQAW also acknowledged that that under Section 5.5 of the Contract, the County could terminate the Contract at any time so long as it gave RQAW seven days notice of the termination and paid certain sums to RQAW. RQAW alleged, however, that because the Contract covered the entire Project, the County breached the Contract by failing to pay termination expenses as provided for in Sections 5.6 and 5.7 of the Contract. For its part, the County argued that it was not required to pay termination expenses because the Contract applied only to the Pre-Design Study phase of the Project. Thus, the County claimed that it had met all of its obligations under the terms of the Contract.

[8] RQAW also alleged that it was entitled to recover damages under the equitable theory of unjust enrichment. In doing so, RQAW incorporated its assertions relating to its breach of contract claim and asserted the following:

> 23. The architectural and engineering services provided by [RQAW] to [the County] related to the Dearborn County Jail renovation and addition project resulted in benefit to the [County].
> 24. [RQAW] undertook these efforts with an expectation of payment for its services pursuant to the Contract.
> 25. It is unjust to allow [the County] to retain the benefit of

[RQAW]'s architectural and engineering services without paying [RQAW] for the value of its services.

Appellant's App. Vol. III, p. 18.

[9] As to RQAW's breach-of-contract claim, the parties filed competing motions for summary judgment. As to RQAW's equitable claim, the County filed a motion for judgment on the pleadings. The trial court conducted a hearing on the parties' motions on December 19, 2016. On March 14, 2017, the trial court granted the County's motion for summary judgment, denied RQAW's motion for summary judgment, and granted the County's motion for judgment on the pleadings. This appeal follows.

# Discussion and Decision

[10] RQAW contends that the trial court erred in entering summary judgment in favor of the County. It also contends that the trial court erred in granting the County's motion for judgment on the pleadings. We will discuss each contention in turn.

## I. Summary Judgment

[11] RQAW contends on appeal that the trial court erred in granting summary judgment in favor of the County. Again, in reviewing the propriety of the trial court's award of summary judgment, the question before us on appeal is whether the trial court properly determined that the County did not breach the terms of the Contract by failing to pay RQAW the termination expenses

outlined in sections 5.6 and 5.7 of the Contract after the County elected to engage the services of a different architectural firm for all remaining phases of the Project.

## A. Standard of Review

[12]     This Court reviews grants of summary judgment de novo, giving no deference to the trial court's judgment. *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 736-37 (Ind. Ct. App. 2005). We apply the same standard as the trial court: summary judgment is appropriate only if the designated evidence shows that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. *Id*. at 736; Indiana Trial Rule 56(C). Cross-motions for summary judgment do not alter the standard of review; each motion will be considered separately to determine whether the moving party is entitled to judgment as a matter of law. *Swanson*, 820 N.E.2d at 737. If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Id*.

*Sasso v. Warsaw Orthopedic, Inc.*, 45 N.E.3d 835, 839-40 (Ind. Ct. App. 2015), *trans. denied*. "The construction of a written contract is generally a question of law for the court, making summary judgment particularly appropriate in contract disputes." *Id*. at 840.

## B. Analysis

[13]   "To be valid and enforceable, a contract must be reasonably definite and certain." *Id*. (citing *Conwell v. Gray Loon Outdoor Mktg. Group, Inc.*, 906 N.E.2d 805, 813 (Ind. 2009)). "It must 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Id*. (quoting *McLinden v. Coco*,

765 N.E.2d 606, 613 (Ind. Ct. App. 2002)). "The law is well established that a mere agreement to agree at some future time is not enforceable." *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996) (citing *Wallace v. Mertz*, 86 Ind. App. 185, 191, 156 N.E.2d 562, 564 (1927)).

> Nevertheless, parties may make an enforceable contract which obligates them to execute a subsequent final written agreement:
>> It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent final agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called "contract to make a contract" is not a contract at all.
>
> 1 Arthur Linton Corbin and Joseph M. Perillo, Corbin on Contracts § 2.8 at 133-34 (rev. ed. 1993) (footnotes omitted); *see also International Shoe Co. v. Lacy*, 114 Ind. App. 641, 53 N.E.2d 636 (1944). Our Court of Appeals more recently discussed this issue in *McMahan Construction Co. v. Wegehoft Bros., Inc.*, 170 Ind. App. 558, 354 N.E.2d 278 (1976), stating that "[a] well known rule provides that mere reference to a more formalized contract does not void the presently existing agreement."

*Id*. at 674-75 (brackets in original).

[14]　　In *Wolvos*, the Indiana Supreme Court considered the enforceability of an option contract involving the sale of a piece of property. *Id*. at 674-78. In doing so, the Court stated the following:

> The question of whether an agreement is an enforceable option contract or merely an agreement to agree involves two interrelated areas: "intent to be bound and definiteness of terms." *See generally* 1 Arthur Linton Corbin and Joseph M. Perillo, Corbin on Contracts § 2.8 at 131 (rev. ed. 1993). According to the Restatement (Second) of Contracts § 33 cmt. f (1979), "[p]romises may be indefinite.... The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound; minor items are more likely to be left to the option of one of the parties or to what is customary or reasonable."

*Id*. at 675. We find that the same "interrelated areas" apply equally to the question before us on appeal.

### 1. Intent to be Bound

"We first examine whether the parties intended to be bound by the agreement, or whether they intended that they would be bound only after executing a subsequent written document." *Id*. "When one enters into an agreement with the understanding that neither party is bound until a subsequent formal written document is executed, no enforceable contract exists until the subsequent document is executed." *Id*. As to the Pre-Design Study, it is undisputed that the parties intended to be bound by the terms of the Contract. A dispute arises, however, as to whether the parties intended for the Contract to bind them for the remaining portions of the Project.

In order to determine the parties' intent, we must review the terms of the contract at issue. *See Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d

494, 501 (Ind. Ct. App. 2007) (providing that "the parties' intent is determined from the four corners of the document").

> We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless." [*Four Seasons Mfg.*, 870 N.E.2d at 501]. "And, in reading the terms of a contract together, we keep in mind that the more specific terms control over any inconsistent general statements." *DLZ Ind., LLC v. Greene Cty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009).

*B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 827-28 (Ind. Ct. App. 2017).

[17] While we acknowledge that the County designated some evidence which could potentially indicate that it intended for the Contract to bind it only for the Pre-Design Study phase of the Project, for the purpose of reviewing the trial court's award of summary judgment to the County, we will limit our review only to the terms of the Contract. Again, the parties' Contract was made up of two standard AIA documents, Document B102-2007 and Document B201-2007. Document B102-2007 provided a generalized scope of RQAW's basic services and made only a general reference to the phases of the Project which would come after the Pre-Design Study was completed. Document B201-2007, on the other hand, provided a detailed description of RQAW's obligations and the services that RQAW would provide under each of the phases of the project including: (1) the Pre-Design Study, (2) the schematic design phase, (3) the design development phase, (4) the construction documents phase, (5) the

competitive bidding phase, and (6) the construction phase. It also detailed additional services that would be provided by RQAW throughout the project.

[18] It is well-settled that when interpreting a contract, "[t]he contract is to be read as a whole when trying to ascertain the parties' intent, and we will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Four Seasons Mfg.*, 870 N.E.2d at 501 (citing *S.C. Nestel, Inc. v. Future Constr., Inc.*, 836 N.E.2d 445, 450 (Ind. Ct. App. 2005)). Accordingly, we will "accept an interpretation of the contract that harmonizes its provisions, as opposed to one that causes the provisions to conflict." *Id.* (citing *Nestel*, 836 N.E.2d at 450). In this case, given that both Document B102-2007 and Document B201-2007 make up the parties' Contract, we must read these documents together in order to determine the parties' intent. When read together as a whole, these documents seem to suggest that the parties intended that RQAW would provide architectural services for all phases of the Project.

## 2. Essential Terms

[19] We next turn our attention to whether the Contract lacked such essential terms as to render the contract unenforceable. In *Wolvos*, the Indiana Supreme Court held that

> [t]he contract which is sought to be specifically executed, ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary

jurisdiction to enforce it, but will leave the party to his legal remedy.

668 N.E.2d at 675 (quoting *Burk v. Mead*, 159 Ind. 252, 257, 64 N.E. 880, 882 (1902), which quoted *Colson v. Thompson*, 15 U.S. 336, 341 (1817)). "Enforcement of a writing which is incomplete or ambiguous creates the substantial danger that the court will enforce something neither party intended." *Id.* (citing *Cline v. Strong*, 52 Ind. App. 286, 288, 100 N.E. 569, 570 (1913)).

[20] In *Sasso*, we concluded that a contract in which the parties explicitly contemplated that they would enter into a subsequent written addendum, but failed to do so, lacked an essential term and was therefore unenforceable. 45 N.E.3d at 840-41. The contract at issue in *Sasso* indicated that SEE LLC would be entitled to either 5% or 2.5% of the net sales of certain medical devices. *Id.* at 841. The contract provided that the parties would subsequently create an addendum to the contract which would list the medical device products which were to be covered by the contract. *Id.* The parties, however, "never created an addendum listing the products to be covered." *Id.* We determined that the addendum would not be a mere memorial or the agreement already reached, but rather would be a future agreement by the parties over material terms of the contract. *Id.* Upon review, we concluded that the absence of the addendum rendered the parties' contract unenforceable for two reasons: (1) there was no basis for determining whether a breach occurred and (2) there was no basis for giving an appropriate remedy. *Id.* In reaching this conclusion, we noted that

"[b]ut since the definition of 'Medical Device' depends on the addendum, and since the addendum does not exist, a court would have no way of determining the damages; 5% or 2.5% *of what*?" *Id.* (emphasis in original).

[21] In the instant matter, it is undisputed that a valid contract exists with regard to the Pre-Design Study. As to that phase, the contract is reasonably definite and certain as it contains all essential terms, *i.e.*, the parties, the scope of work to be completed, and the cost of such work.

[22] By contrast, however, with regards to all phases coming after the Pre-Design Study, the Contract lacks two of the three above-listed essential terms. Specifically, the Contract does not include either the scope of work to be completed or the cost of such work. The Contract indicates that such terms will be determined at a later date. Undoubtedly, the scope of the work to be completed and the cost of such work are essential terms to a construction and design contract. Without these terms, it would be impossible to determine whether a future breach occurred and, if so, what damages would be appropriate. As such, if we were to enforce the Contract against the parties, we would create the substantial danger of enforcing something that neither party intended. *See Wolvos*, 668 N.E.2d at 675. Thus, as to all phases coming after the Pre-Design Study, there was no enforceable contract.

### 3. Conclusion

[23] While we believe that the terms of the Contract suggest that the parties intended that RQAW would provide the necessary architectural services for the entire

Project, we agree with the trial court's determination that the Contract lacked several essential terms relating to all post-Pre-Design Study phases. Specifically, the Contract lacked the following essential terms: scope of work and overall cost of the project. Without these essential terms, we must agree with the trial court's determination that the contract was unenforceable as to all phases coming after the Pre-Design Study.

[24] Because there was no enforceable contract for the phases coming after the Pre-Design Study, there can be no breach of contract with regards to those phases. As such, in granting summary judgment for the County, the trial court properly determined that, as a matter of law, there was no breach that would entitle RQAW to recover damages. We therefore affirm the trial court's order granting summary judgment in favor of the County.

## II. Judgment on the Pleadings

[25] RQAW also contends that the trial court erred in granting the County's motion for judgment on the pleadings in relation to RQAW's equitable claim of unjust enrichment.

> A motion for judgment on the pleadings pursuant to Ind. Trial Rule 12(C) attacks the legal sufficiency of the pleadings. *Rivera ex rel. Rivera v. City of Nappanee*, 704 N.E.2d 131, 132 (Ind. Ct. App. 1998), *trans. denied* (1999). A judgment on the pleadings is proper only when there are no genuine issues of material fact and when the facts shown by the pleadings clearly establish that the non-moving party cannot in any way succeed under the facts and allegations therein. *Bledsoe v. Fleming*, 712 N.E.2d 1067, 1069-70 (Ind. Ct. App. 1999).

In reviewing a trial court's decision on a motion for judgment on the pleadings pursuant to T.R. 12(C), this court conducts a de novo review. *Transcontinental Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1280 (Ind. Ct. App. 1999); Rivera, 704 N.E.2d at 132. We look only to the pleadings in making this assessment. *Schuman v. Kobets*, 716 N.E.2d 355, 356 (Ind. 1999).

We will accept as true the well-pleaded material facts alleged, and we will not affirm if there are any genuine issues of material fact. *Id.*; *Transcontinental Ins.*, 714 N.E.2d at 1280. The moving party is deemed to have admitted well-pleaded facts in favor of the nonmovant, and this court will draw all reasonable inferences in favor of the non-movant. *Transcontinental Ins.*, 714 N.E.2d at 1280; *Rivera*, 704 N.E.2d at 132. We will affirm the trial court's grant of a T.R. 12(C) motion for judgment when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Transcontinental Ins.*, 714 N.E.2d at 1280.

*Eskew v. Cornett*, 744 N.E.2d 954, 956-57 (Ind. Ct. App. 2001).

[26]     Here, like in *Eskew*, the construction of a contract is at issue.

Since the trial rules require the pleader to attach to its complaint the written document upon which its action is premised, *see* T.R. 9.2(A), we may look to both the complaint and the attached contract for purposes of determining the appropriateness of the court's ruling on the motion for judgment on the pleadings. *Gregory & Appel, Inc. v. Duck*, 459 N.E.2d 46, 50-51 (Ind. Ct. App. 1984). However, where allegations of a pleading are inconsistent with terms of a written contract attached as an exhibit, the terms of the contract, fairly construed, must prevail over an averment differing therefrom. *Id.* Furthermore, a moving party, for the purpose of the motion, concedes only the accuracy of the factual

> allegations in his adversary's pleadings; he does not admit
> assertions which constitute conclusions of law. *Id.*

*Id.* at 957.

[27] With respect to its claim for unjust enrichment, RQAW asserted the following in its complaint:

> 22.    [RQAW] realleges Paragraphs 1 through 21 of this
> Complaint as if set forth herein verbatim.[3]
> 23.    The architectural and engineering services provided by
> [RQAW] to [the County] related to the Dearborn County Jail
> renovation and addition project resulted in benefit to the
> [County].
> 24.    [RQAW] undertook these efforts with an expectation of
> payment for its services pursuant to the Contract.
> 25.    It is unjust to allow [the County] to retain the benefit of
> [RQAW]'s architectural and engineering services without paying
> [RQAW] for the value of its services.

Appellant's App. Vol. III, p. 18.  However, as is stated above, review of the contract reveals that while the parties had agreed to an enforceable contract with regard to the Pre-Design Study, the parties had not agreed to an enforceable contract with regard to any of the phases that come after the Pre-Design Study.  RQAW does not allege that it provided services for which it was not compensated in relation to the Pre-Design Study.  We conclude that it is

---

[3] Paragraphs one through twenty-one set forth certain undisputed facts and present RQAW's breach of contract claim.  These paragraphs allege that the County breached the contract with regards to all phases coming after the Pre-Design Study and that as a result, RQAW suffered damages.

clear from the face of the pleadings that RQAW "cannot in any way succeed under the operative facts and allegations made therein." *Eskew*, 744 N.E.2d at 957. As such, we affirm the trial court's judgment in this regard.

# Conclusion

[28] In sum, we affirm the trial court's award of summary judgment in favor of the County. We also affirm the trial court's order granting the County's motion for judgment on the pleadings as it relates to RQAW's equitable claim of unjust enrichment.

[29] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.